HARRY TROLL, Curator of the Estate of JOSEPH KOZLOWSKI, a Minor, Appellant, v. EHRLER DRAYAGE COMPANY.

Division One, January 3, 1914.

1. DEMURRER TO PLAINTIFF'S EVIDENCE: Inferences Court May Draw. It is the duty of the trial court, in passing upon a demurrer to plaintiff's evidence, to make every inference of fact in his favor that a jury might have made with any degree of propriety, but the court is not at liberty to make inferences of fact in favor of the defendant to countervail or overthrow either presumptions of law or inferences of fact in favor of the plaintiff.

2. ————: ————: Negligence. Negligence is ordinarily a question for the jury. It is always so when the evidence on material points is conflicting, or where, the facts being undisputed, different minds might draw different conclusions from them. And when the question of negligence arises upon even a conceded state of facts from which reasonable men might arrive at different conclusions, it must be submitted to the jury, and if the inferences to be drawn from the evidence are not certain or incontrovertible, the question of negligence cannot be passed upon by the court.

Troll v. Drayage Co.

3. **NEGLIGENCE: Warning: Consequences of Negligent' Act: Master and Servant.** It is negligence for the driver of a wagon to start his horses after being warned that injury to some one or something is likely to result, and his master is liable for the consequences of that negligence even though the driver did not at the time foresee, or even if he could not foresee, the actual consequences.

4. ———: ———: ———: **Wagon Driver: Evidence: Demurrer.** Plaintiff, a child eighteen months old, was playing in charge of his ten or twelve-year-old sister in a yard from which a covered passage led to an alley in which defendant's wagon stood. The evidence for the plaintiff tends to show that the sister left him a moment, and when, on re-entering the yard, she saw he had gone into the alley, she ran through the passageway and on approaching the alley entrance saw the child near the rear wheel of defendant's wagon and saw the driver getting on the wagon and getting ready to start the horses. She testified she ran through the passageway and as she ran out into the alley she "hollered at" the driver, "Hey, mister, stop;" that he turned around and looked at her but "didn't notice" and "didn't listen" and didn't stop but struck the horses with his whip, driving on and over the little boy. The wagon was fourteen feet long and seven feet wide and the load upon it was higher than the driver's head when he was seated, but the evidence tends to show that he was standing on a step or foot-rest on the front of the wagon when the little girl shouted to him to stop. There was also evidence that he could easily have glanced along the side of the wagon and would then have seen the child near the wheel, and evidence that the child was seen a few moments before "wandering around in the alley." *Held*, that there was sufficient evidence to take the case to the jury, and that, therefore, the trial court erred in sustaining a demurrer at the close of plaintiff's evidence.

Appeal from St. Louis City Circuit Court.—*Hon. Charles Claflin Allen,* Judge.

REVERSED AND REMANDED.

*Leahy, Saunders & Barth* for appellant.

(1) On a demurrer to plaintiff's evidence, every reasonable intendment in favor of plaintiff to be drawn from the evidence offered by him must be indulged in his favor, and the evidence introduced in his behalf regarded as absolutely true. Gratiot v. Rail-

road, 116 Mo. 450; Schwyart v. Barrett, 145 Mo. App. 334; Hannan v. Coal Co., 156 Mo. 243; Fassbinder v. Railroad, 126 Mo. App. 568; Meily v. Railroad, 215 Mo. 584; Frick v. Railroad, 75 Mo. 601; Pauck v. Beef Co., 159 Mo. 467; Bensiek v. Transit Co., 125 Mo. App. 128. (2) Negligence is a blended question of law and fact. Shearman & Redfield on Negligence (6 Ed.), sec. 52; Tarwater v. Railroad, 42 Mo. 192. And such has been the uniform ruling in this State. (3) In this case, the master is liable for the negligent acts of his servant in injuring plaintiff. (4) It appears to be the settled rule in this State that in an action for injuries, it is only where the facts are such that all reasonable men must draw the same conclusion that the question of negligence is for the court. Coombs v. Kirksville, 134 Mo. App. 645; Kennedy v. Railroad, 190 Mo. 444; Dorks v. Scudder-Gale Gro. Co., 146 Mo. App. 246; Heine v. Railroad, 144 Mo. App. 447; Osborn v. Nelson, 141 Mo. App. 428; Vaughn v. Brewing Co., 152 Mo. App. 48; Murrel v. Smith, 152 Mo. App. 95. Though the facts are not disputed, negligence is still a question for the jury if different conclusions might be drawn by the minds of reasonable men from the facts as established. Tabler v. Railroad, 93 Mo. 79; O'Meilla v. Railroad, 115 Mo. 205; Lamb v. Railroad, 147 Mo. 171; Gratiot v. Railroad, 116 Mo. 466; Hannan v. Coal Co., 156 Mo. 243; Combs v. Kirksville, 134 Mo. App. 649; Kennedy v. Railroad, 190 Mo. 444; Lasky v. Railroad, 83 Me. 461; Railroad v. Fitzpatrick, 35 Md. 32; McCully v. Clark, 40 Pa. St. 399, 80 Am. Dec. 584; Shoenblum v. New York, 58 App. Div. 285. Negligence being a breach of the duty to exercise reasonable care under the circumstances, it is for the jury to consider all the surrounding conditions and say whether the defendant's act or omission was or was not violative of this obligation. It is the province of the jury to note the special circumstances and surroundings of each particular case, and then

to say whether the conduct of the parties in that case was such as would be expected of reasonable and prudent men under a similar state of affairs. 21 Am. & Eng. Ency. Law (2 Ed.), p. 498. (6) In order for the plaintiff to sustain the burden of proof to show negligence, it is only necessary for him to make out a prima-facie case. Gannon v. Gas Light Co., 145 Mo. 502; Bischoff v. Schulz, 5 N. Y. Supp. 757; Canal Co. v. Bentley, 66 Pa. St. 30; Mitchell v. Railroad, 100 Tenn. 329; Railroad v. Foreman, 73 Tex. 311, 15 Am. St. 785. When this is done the burden shifts to the defendant, who must, to avoid liability, rebut such presumptions and show the absence of negligence. Mitchell v. Railroad, 100 Tenn. 329. It is for the jury to determine whether the burden of proving negligence has been sustained. Cox v. Railroad, 123 N. C. 604.

*Ellerbe & Brokaw* for respondent.

(1) The demurrer to plaintiff's evidence was properly sustained as there was a complete absence of proof that plaintiff was seen or should or could have been seen by defendant's servant before the accident. Parsons v. Yaeger, 7 Mo. App. 594; Bennett v. Railroad, 242 Mo. 134. (2) Any finding of negligence on the part of the driver of the wagon can only be based upon a mere conjecture as distinguished from a legitimate inference. Porter v. Brewing Assn., 24 Mo. App. 1; Lee v. Jones, 181 Mo. 291. (3) A defendant is presumed to have been in the exercise of ordinary care, to have been performing his duties and obligations, until the contrary is shown by evidence. The mere injury to a plaintiff by an instrumentality or a servant of a defendant is not sufficient to warrant a presumption of negligence. Yarnell v. Railroad, 113 Mo. 579; Webb v. Baldwin, 165 Mo. App. 252; Cahill v. Railroad, 205 Mo. 404; Menteer v. Fruit Co., 240 Mo. 186. (4) It is improper for court or jury to base a pre-

sumption upon a presumption such as would have been necessary in order to have submitted this case to the jury.    Yarnell v. Railroad, 113 Mo. 578; Sexton v. Railroad, 245 Mo. 254.

BLAIR, C.—One of respondent's wagons was driven over appellant, crushing off his left arm, and this action was instituted in the circuit court of the city of St. Louis to recover damages therefor.    This appeal is from a judgment on a verdict the court directed for defendant at the close of plaintiff's evidence.

At the time he was injured, Joseph Kozlowski was eighteen months old.    About 2:30 p. m., August 17, 1908, this child was in charge of his (then) ten- or eleven-year-old sister and the two had been in a yard from which a covered passage three feet wide, ten feet high and twenty feet long led eastwardly into the alley running north and south through the block between Ninth and Tenth streets and south of O'Fallon street. Respondent's wagon, in charge of a negro driver, was standing on the east side of the alley, across from the entrance to the passageway described, the horses' heads being to the south.

There was evidence tending to show that the sister of the injured child momentarily left him, and when, on re-entering the yard, she saw he had gone into the alley, she ran through the passageway and on approaching the alley entrance saw the child near the rear wheel of respondent's wagon and saw the driver getting on the wagon and getting ready to start the horses.    She testified she ran through the passageway and as she ran out into the alley she "hollered at" the driver, "Hey, mister, stop;" that he turned around and looked at her but "didn't notice" and "didn't listen" and didn't stop but struck the horses with his whip, driving on and over the little boy who was playing by the wheel of the wagon.

The children had entered the yard they were in from the alley, coming straight up the alley but a minute or two before the little boy re-entered it, and it is a fair inference the wagon was then in the alley, but there is no evidence whether the driver was in a position to see the children at that time.

As the little girl entered the alley and cried to the driver to stop she was greatly agitated and was running at the top of her speed toward the child near the rear wagon wheel. There is evidence she was quite beside herself with excitement. The wagon was fourteen feet long and seven feet wide and the load upon it was higher than the driver's head when he was seated, but the evidence tends to show he was standing on a step or foot-rest on the front of the wagon when the little girl shouted to him to stop. There was also evidence he could have easily glanced along the side of the wagon and would then have seen the child near the wheel, and evidence the child was seen a few moments before "wandering around in the alley."

After injuring the child, the driver did not stop his team until arrested a block or so away from the scene.

There was other evidence on other matters but that stated is all that relates to the question whether there was sufficient evidence of negligence to take the case to the jury, and this is the question presented by the appeal.

It was the duty of the trial court, in passing upon the demurrer to the evidence, "to make every inference of fact in favor of the party offering the evidence, which a jury might, with any degree of propriety, have inferred in his favor . . . but the court was not at liberty, in passing on such demurrer, to make inferences of fact in favor of the defendant to countervail or overthrow either presump-

**Demurrer to Evidence: Allowable Inferences.**

tions of law or inferences of fact in favor of the plaintiff; that would clearly be usurping the province of the jury." [Buesching v. Gaslight Co., 73 Mo. l. c. 231.]

Another principle is that "negligence is ordinarily a question for the jury. It is always so when the evidence on material points is conflicting, or where the facts being undisputed different minds might reasonably draw different conclusions from them . . . and when the question of negligence arises upon even a conceded state of facts from which reasonable men might arrive at different conclusions, it must be submitted to the jury, and if the inferences to be drawn from the evidence are not certain or incontrovertible, the question of negligence cannot be passed upon by the court." [Gratiot v. Railroad, 116 Mo. l. c. 466.]

Negligence.

Whether in this case the driver was negligent must be determined in the light of all the circumstances. He was not entitled to the exclusive use of the alley. He certainly was not justified in disregarding the injured child's presence near the wheels of the wagon if he had notice of it in any way before he put the wagon in motion. There is no direct evidence he had such notice. A jury, however, might with propriety have found from the evidence that the driver heard the little girl's cry to him. She testified positively that when she called to him to stop he turned around and looked at her. It is a fair inference that he was not more than twenty feet from her at the time. The jury would have been justified in concluding that when the child testified the driver turned but "didn't listen to" her and that he looked at her "but he didn't notice," and (in answer to a leading question on cross-examination which included an incorrect assumption as to her previous testimony on the point) that he "looked as if he didn't hear her," she meant the driver did not heed her warning.

Driver of Wagon: Evidence.

When the little girl cried out to the driver, the injured boy was then at the rear wheel of the wagon and it was not yet in motion. In connection with the cry to stop, which the jury would have been justified in finding the driver heard, the evidence would justify a further finding that, in response, he turned and saw the little girl and saw that she was greatly agitated and saw that her agitation was causing her to run excitedly toward the part of the wagon immediately in front of the rear wheel where the injured child was standing or playing. The driver was getting ready to start the horses. If he heard the cry to stop, it is a fair inference from the evidence that he understood it was addressed to him. Taking these things into consideration and adding to them the fact that when the driver turned he saw the little girl and saw that though calling to him to stop she was not running toward him but toward the rear wheel of the wagon and for some purpose attempting to reach it in great haste and that whatever that purpose was it had greatly excited her, it must be said, assuming, as we must, that these things are true, that the driver had sufficient notice there was danger of some kind to be apprehended if he then put his wagon in motion.

It was not necessary that the warning should have been specific. It was negligence for the driver to start **Warning.** his horses after being warned that injury to some one or something was likely to result from such an act. There was evidence he disregarded the warning, whipped up his horses and ran over the child. If these things are true, his master is liable for the consequences of that negligence even though he did not forsee, or even if he could not foresee, the actual consequences at the time. [Hoepper v. Hotel Co., 142 Mo. l. c. 389; Miller v. Railroad, 90 Mo. l. c. 394; Christianson v. Railroad, 67 Minn. l. c. 97, and cases cited; Santa Fe Ry. Co. v. Parry, 67 Kan. l. c. 519; City of Dixon v. Scott, 181 Ill. l. c. 119;

Coolidge v. Hallauer, 126 Wis. 1. c. 250; Hill v. Winsor, 118 Mass. 1. c. 258, 259.]

The case should have been submitted to the jury. The judgment is reversed and the cause remanded. *Brown, C.,* concurs.

PER CURIAM.—The foregoing opinion of BLAIR, C., is adopted as the opinion of the court. All the judges concur.