JESSIE McKINNEY, Respondent, v. MARTIN-HOLLORAN-KLAUS LAUNDRY COMPANY, a Corporation, Appellant.

St. Louis Court of Appeals.    Opinion Filed January 8, 1918.

1.  **TRIAL PRACTICE:** Contributory Negligence: Necessity of Pleading.    Even though no plea of contributory negligence is set up by the defendant, yet whenever it is shown by plaintiff's own proof that there was contributory negligence such as to preclude a recovery, the trial court should take the case from the jury upon a demurrer to the evidence.

2. **MASTER AND SERVANT:** Injuries to Servant: Contributory Negligence: Evidence. In an action for personal injuries by a laundry employee. whose hand was hurt in an ironing machine, and there was a conflict in plaintiff's evidence as to whether the machine could have been operated in two ways, one of which would have been safe, and the other unsafe, *held* that plaintiff was not guilty of contributory negligence as a matter of law, and that the trial court properly submitted the question to the jury.

3. ———: ———: Defective Appliances: Instructions: Sufficiency. In an action by a laundry employee for injuries received while operating an ironing machine, the court at her request instructed that, though plaintiff knew, or by the exercise of ordinary care could have known, that the machine was out of order and dangerous at the time she was injured, such knowledge did not defeat her right of recovery if she was negligently furnished and ordered by the defendant's foreman to operate such machine, unless the danger was so glaring as to threaten immediate injury, and that an ordinarily prudent person in plaintiff's position would have refused to work at the machine. *Held*, that the instruction did not purport to cover the whole case, and direct a verdict, and while the instruction was subject to criticism, its defects were cured by plaintiff's previous instruction, which correctly and fully covered the entire case, and predicated a finding on all the essential facts necessary for the jury to find before they could return a verdict in favor of plaintiff.

4. **TRIAL PRACTICE:** Instructions: Sufficiency. Where a series of instructions taken together contained a complete exposition of the law, and covered every phase of the case, a verdict obtained thereon must be sustained, though the instructions taken separately are incomplete.

5. ———: Appellate Practice: Improper Argument of Counsel: Sustaining Objection. Where the court sustained an objection to improper argument by plaintiff's counsel, and defendant's counsel did not move to discharge the jury and declare mistrial, or to rebuke plaintiff's counsel, error on appeal cannot be predicated thereon.

Appeal from the Circuit Court of the City of St Louis.
—*Hon. J. Hugo Grimm*, Judge.

AFFIRMED.

*McGrath & Houlihan* and *Taylor & Chasnoff* for appellant.

(1) The court erred in refusing to give the instructions in the nature of a demurrer to the evidence,

offered by appellant at the close of respondent's evidence and at the close of the whole case. From the testimony of respondent it conclusively appears that the machine in question could have been operated in two ways, one safe and one unsafe. Respondent chose to operate it in the unsafe way. This constituted contributory negligence, and she was not entitled to recover. Even granting that the manner of operation adopted by respondent was the only one available, it was so obviously dangerous that its adoption by respondent constituted contributory negligence, and she was not entitled to recover. Sissel v. Railroad, 214 Mo. 515; Moore v. Railway, 146 Mo. 572; Hurst v. Railroad, 163 Mo. 309; Montgomery v. Railroad, 109 Mo. App. 88; Smith v. Box Company, 193 Mo. 715; Pohlmann v. American Foundry Co., 123 Mo. App. 219; Slagel v Lumber Company, 138 Mo. App. 432; Hirsch v. Bread Company, 150 Mo. App. 162; Harris v. Railroad, 146 Mo. App. 524; affirmed, 250 Mo. 567; Schiller v. Breweries Company, 156 Mo. App. 569; Rogers v. Packing Company, 185 Mo. App. 99. (2) The trial court erred in giving instruction 2 offered by respondent and modified by the court. This instruction authorized a recovery for respondent, on proof of general negligence when specific negligence was pleaded, it assumed the existence of controverted matter, and although purporting to cover the entire case, ignored and excluded elements necessary to respondent's recovery. Cases cited under point 1, supra, Cathart v. Railway Co., 19 Mo. App. 113; Flynn v. Bridge Co., 42 Mo. App. 529; Freeman v. Railway Co., 95 Mo. App. 94; Baker v. Independence, 106 Mo. App. 507; Wilks v. Railroad, 159 Mo. App. 711; Bryan v. Lamp Co., 176 Mo. App. 716; Dority v. Railroad, 188 Mo. App. 365; Walker v. White, 192 Mo. App. 13. (3) The conduct of counsel for respondent in arguing to the jury the matter of respondent's poverty was so prejudical to appellant that its effects were not eradicated by the action of the trial court. It is the function of an appellate court, under such circumstances, to

set aside a judgment so obtained and to award a new trial. Bishop v. Hunt, 24 Mo. App. 373; Killoren v. Dunn, 68 Mo. App. 212; Rice-Stix & Co. v. Sally, 176 Mo. 107; Beck v. Railroad, 129 Mo. App. 7; Barnes v. St. Joseph, 139 Mo. App. 545; Barr v. Railroad, 138 Mo. App. 471; Trent v. Printing Co., 141 Mo. App. 437; O'Donnell v. McElroy, 157 Mo. App. 547; Haake v. Milling Co., 168 Mo. App. 177.

*Charles P. Comer* for respondent.

BECKER, J.—This is an action for personal injuries to plaintiff, alleged to have been sustained by her while in the employ of the defendant company, and by reason of the defendant's negligence. From a judgment in favor of plaintiff and against defendant in the sum of $1750, the defendant appeals.

Plaintiff alleges in her petition that she was in the employ of the defendant company and working upon and about an ironing machine, which was operated by mechanical power; that part of her duty was to iron clothing with said ironing machine and in order to do so it was necessary for her to arrange such clothing upon the machine with her hands, and that when the clothing was properly adjusted and ready for ironing, it was her duty to transmit mechanical power to said machine by pressing upon a treadle with her foot which caused same to operate and iron said clothing.

The petition further alleges that the said ironing machine, upon which plaintiff was required to work, was defective, and that while she was working upon it power was transmitted to said machine in some way unknown to plaintiff and without the application of foot pressure to the treadle thereof, which caused said machine to close upon plaintiff's left hand and to injure the same; that appellant knew, or by the exercise of ordinary care could have known of this defective condition but negligently furnished the respondent

with this machine as a result of which negligence plaintiff received the injuries complained of.

The defendant in its answer denied the allegations of the petition generally and pleaded the negligence of plaintiff either "(a), in carelessly placing her hand on the ironing board and in front of the iron while the same was in motion, and in carelessly permitting her hand to remain thereon until it was run upon and burned; or, (b) in placing her hand on the ironing board and in front of the iron while the same was not in operation and in carelessly applying the foot power, thereby causing the iron to run upon and burn her hand."

The plaintiff's reply was a general denial of the allegations in the answer.

Plaintiff testified that at the time she met with her injuries she had been working on the ironing machine in question about a month; that the machine consisted of an ironing board about two and one-half feet long by about eighteen inches wide, with an iron roller set at one end of, and slightly above the ironing board. This iron roller, when the machine was used, was kept at a high temperature; that when the machine is at rest one end of the ironing board is directly under the iron roller. The plaintiff testified that her method of working was to place the garment to be ironed upon the ironing board while the machine was at rest, then to transmit power to the machine by pressing a foot treadle which caused the iron roller to revolve and simultaneously therewith the ironing board, with the clothing to be ironed upon it, would raise up sufficiently to press the garment against the iron and the ironing board by the action of the machine would move backwards and away from the operator and under the iron to its full length. That whenever the pressure was removed from the foot treadle the ironing board would move out from under the iron back toward the operator and come to a rest; that the iron roller is stationary having only a revolving motion; that on the side of the machine there is a lever provided, by which the iron-

ing board can be dropped down and away from the iron about one inch.

Plaintiff further testified that at the time she received her injuries she was ironing a collar of a garment; that the usual way was to stretch it across the top of the ironing board directly under the iron, though the operator could place the collar of the garment across the center of the board or over the lower end of the board, neither of which portions of the board were under the iron when the machine was at rest. Plaintiff further testified that the machine had been out of order for about a month and that it had on a number of occasions, "closed up" of its own accord without her placing her foot upon the treadle and went through the same operation as though the machine had been started by pressing the treadle. Plaintiff further testified that as she was straightening the collar of the coat which she was ironing, on the ironing board, and, "my hand was about six inches from the top of the ironing board under the roller," the machine closed up on her hand and that she had not put her foot upon the treadle nor done anything else to make it "close up;" that as soon as plaintiff was able she pulled her hand out of the machine and that the hand was badly burned, mashed, and all the flesh was taken off, as were parts of several of her finger nails. Plaintiff further testified that she did not know what caused the machine to close up except that it was out of order; that on two or three occasions when it acted that way she had reported the matter to Mr. Klaus, who was the manager of the defendant laundry company and that he had said: "Go on working on that machine; there is nothing the matter with it," and that under his instructions she had continued to work on the machine.

On cross-examination plaintiff testified that: "The ironing machine would go all the way back when it started without your having your foot on the treadle. It went almost all the way back when it caught my hand. My sister saw it too. . . . When I got my hand caught in the machine I was ironing a coat. I was

ironing the collar and had the coat slipped over the iron-ing board . . . At the time of my injury I had the collar close up to the top of the ironing board. I could have put the collar across the middle or down near the end of the board or close to myself, but it would have made no difference. The machine would have caught my hand anyway.''

Plaintiff further testified that the ironing machine moved slowly when the machine was in order, but that when it closed up of its own accord without any pres-sure on the treadle, ''it closed up right quick. When the machine is operated properly and not out of order the board moves gradually up under the iron and the iron simply turns around under the board. On the occasion that I was injured it went up rapidly and not in accordance with the regular course—it just closed up right quick. I am positive of that.'' That when the machine was out of order the ironing board did not run quite all the way down under the iron. It did not run as far as when starting of its own accord when out of order, as it does when put in operation by pressure on the treadle; that when out of order it lacks about six or eight inches of going to the end of the board.

Plaintiff further testified that it was necessary, ''for me to put my hands on the ironing board to straighten out the collar. I could not have straightened it out by putting by hand down to the side of the board and stretching it across that way—that would not take all the wrinkles out of the collar. . . . This machine had closed up that way seven or eight times during the month I worked on it and I thought that by being careful I could operate the machine without getting injured. I told Mr. Klaus that the machine went up some times by itself and did not work right. He said, 'Go on and work it; there is nothing wrong with it.' · I do not know how many times I told Mr. Klaus. The last time I told him was two or three days before I got hurt. I told him a number of times.''

Ida Elriod, a witness for plaintiff, testified that she was working for the defendant company on the

machine next to plaintiff at the time plaintiff met with her injuries. She testified that she had on one occasion seen the ironing machine, at which plaintiff met with her injuries, operate of its own accord without any one pushing down the treadle. As the witness expressed it: "I knew this machine to jump or close up on one occasion."

Core McKinney testified for plaintiff that she was a sister of plaintiff and was in the employ of the defendant company at the time plaintiff met with her injuries and was operating the third machine from her; that she had seen the ironing machine at which plaintiff met with her injuries close up without the treadle being pressed; that she saw the machine of its own accord close up when another woman other than the plaintiff was operating it, and also saw the machine close up while the plaintiff, her sister, was working on it.

William J. Klaus was a witness for defendant. He testified that he was the manager of the defendant company and had been so for ten years and that he looked after the second floor of the laundry where the various machines were located, upon which floor was the machine upon which plaintiff met with her injuries; that the ironing machine had an automatic device which, when the foot is taken off the pedal, automatically throws the machine out of operation and it would be impossible for the machine to run farther than the board; that when the foot is taken off the pedal the machine would run perhaps an inch before stopping; that he had never known this particular ironing machine to start without putting a foot on the pedal; that plaintiff had been working on this machine about seven weeks and that during that time she had not made any complaint of the machine being out of order or defective, nor had she requested him at any time to make any repairs, and that the machine was not out of order in any way at the time she was injured and that the machine was never out of order and the company had never spent five cents on it for repairs.

In answer to the court's question: "Why should this machine start without using that treadle?" he answered: "It only started once and at that time the screw in the shifter came loose and it ran back and forward there for six inches. I tightened up the screw in the shifter about a week afterwards, or it may have been ten days afterward. At that time my attention was called to the fact that the machine was automatically shifting. It is a set screw in the shifter that came loose."

On cross-examination Klaus stated that it was his duty to oversee the machines and repair them if anything was wrong; that plaintiff never at any time made a complaint about the machine, and that he did not tell her to go ahead and work on it; that at the time the plaintiff was injured he was down in the boiler room. He further stated that the pressure from the iron onto the ironing board was about 1500 pounds; that, "if you caught your hand between the ironing board and iron and put your foot on the pedal, you never could get out."

Charles Reisenweber testified for the defendant that he was the inventor of the machine in question; that the machine was equipped with an automatic shifter so that when the foot was taken off the pedal the machine would come to a standstill.

Two witnesses for the defendant testified that they were in the employ of the defendant company at the time plaintiff met with her injuries and for some time prior thereto, and each testified that they had never seen anything wrong with the machine in question.

At the close of plaintiff's case, and again at the close of the entire case, the defendant requested the court to instruct the jury that under the law and the evidence they must return a verdict in favor of the defendant, each of which was refused by the court. This is assigned as error on the ground that it appears from plaintiff's testimony below that the machine in question could have been operated in two ways, one safe, and one unsafe, and that the plaintiff chose to

operate the machine in the unsafe way, which constituted contributory negligence, and plaintiff was therefore not entitled to recover. And further that even though, for the sake of argument, it be granted that the manner of operating the machine adopted by plaintiff was the only one available, still it was so obviously dangerous that its adoption by plaintiff constituted contributory negligence, and she was therefore not entitled to recover.

We have set out the testimony in this case in our statement of facts more fully than usual because learned counsel for appellant argues this point most earnestly. After a careful study of the record in this case we are clearly of the opinion that the point contended for by appellant is untenable. While it is undoubtedly the law that even though no plea of contributory negligence is set up by the defendant, yet whenever it is shown by plaintiff's own proof that there was contributory negligence such as to preclude recovery, the trial court should take the case from the jury upon a demurrer to the evidence. [Sissel v. Railroad Co., 214 Mo. 515, 113 S. W. 1083; Hudson v. Railroad Co., 101 Mo. 13, 14 S. W. 15.] An examination of plaintiff's proof in this case does not show circumstances of contributory negligence which could be held in law to absolutely defeat her right of action and to disprove her own case. There is such a conflict in plaintiff's testimony regarding the question as to whether the machine could have been operated in two ways, one of which would have been safe, and the other unsafe, that the court properly refused to hold, as a matter of law, that plaintiff was guilty of contributory negligence, and properly submitted the question to the jury.

As to the contributory negligence pleaded by the defendant in its answer, the issue thus raised was fully and correctly submitted to the jury under proper instructions. We rule this point against the appellant.

Appellant next complains of plaintiff's instruction No. 2, given by the court, which instruction reads as follows:

"The court instructs the jury that, even though you may believe from the evidence that the plaintiff knew or by the exercise of ordinary care could have known, *that the ironing machine was out of order and dangerous at the time she was injured,* yet this does not defeat her right of recovery in this case, if you believe from the evidence that she was negligently furnished and ordered by defendant's foreman to operate said machine, unless the danger of injury by using it was so glaring as to threaten immediate injury, and that an ordinarily prudent person in plaintiff's position would have refused to work at said machine."

Appellant contends this instruction contains prejudicial error; that the instruction purports to cover the entire case and entirely ignores the duties imposed upon the plaintiff under all the facts; that it is the duty of the employee, when furnished defective appliances by his employer, first to exercise ordinary care in determining whether or not he can safely continue the operation of the appliance or machine, and second, that, after having determined this question in the affirmative, there remains the further duty of exercising ordinary care in the manner of that operation. The point is further made that the instruction proceeds upon the theory that the existence of the defect in the machine was conceded by both parties, and that there was no question upon that point for the jury to determine, when in point of fact it was one of the issues in the case. We hold that the instruction complained of does not purport to cover the whole case, nor does it tell the jury that if they find the facts as alleged in the instruction, that they shall return a verdict in favor of plaintiff. While the instruction is properly subject to criticism, we hold that its defects were cured by the plaintiff's instruction No. 1, given by the court, which correctly and fully covered the entire case and predicates a finding upon all the essential facts necessary for the jury to believe and find before they can return a verdict in favor of plaintiff. As was said in the case of Hughes v. Railroad Co., 127 Mo. 447, 1.

c. 452, 30 S. W. 127: "This court has repeatedly held, since the decision in the case. of Owens v. Railroad, decided in the 95th Mo. 169, overruling the contrary doctrine announced in the case of Sullivan v. Railroad, decided in the 88th Mo. 182, as well as in numerous cases earlier than the Sullivan case, that, where a series of instructions taken together contain a complete exposition of the law and covers every phase of the case, the verdicts obtained thereon will be sustained, even though the instructions when taken separately may be incomplete, and open to objection and criticism; that, if, taken together, the full law of the case can be ascertained, they are complete, and there is no necessity for 'qualifying each instruction, by an express reference to the others.' "

Taking all the instructions together the case was fairly and fully presented to the jury. We find no prejudicial error therein.

The appellant makes one further point that the case should be reversed and remanded because of the conduct of counsel for plaintiff in his argument to the jury at the close of the case. With reference to this point the record is as follows:

"Mr. Comer (attorney for plaintiff): In this case, gentlemen of the jury, this young lady here is suing as a poor person. Our law provides that. when a person comes into court they must put up the court costs for the necessary machinery, unless they are unable to do that, in which event the litigant will then make an application to the judge and state their circumstances and that they have a meritorious —

Mr. Fisher (attorney for defendant): I object to that line of argument.

Court: Objection sustained. That is not a matter for the consideration of the jury. If the plaintiff is entitled to sue as a poor person it is not a matter for the jury at all, it is a matter for the court.

Mr. Comer: Plaintiff objects to the ruling of the court for this reason. We believe that this is a matter of proper argument on the inference as to the preponder-

ance of evidence on behalf of the parties. The fact that plaintiff had a few witnesses—

The Court: If you want to save your exceptions you will dictate it to the stenographer.

Mr. Comer (continuing):—might give rise to the inference that plaintiff's case was weak for that reason. This matter is properly argued to show the plaintiff's position and inability financially to spend money in searching for and gathering witnesses in her case.''

This court has recently passed upon the point in question in the case of Hartley v. Werner, 196 S. W. 1072, l. c. 1074, and also in the case of Milliken v. Larrabee, 192 S. W. 103, l. c. 106. In the latter case we said: ''It is a well settled law in this State that, whenever remarks of counsel during the progress of the trial shall amount to a misstatement of a material fact which is considered by the opposing counsel as prejudicial, it is necessary that an objection be noted to the party's remarks alleged to be objectionable, and to call the attention of the trial court to the specific ground on which the objection is based, and that the court be requested to rebuke counsel therefor, and should the court not administer the proper rebuke, counsel should then except to the court's failure to rebuke, and unless the record shows this to have been done, our courts, except in extreme cases, will not grant a new trial on this ground. [Torreyson v. United Railways Co., 246 Mo. 696, l. c. 706, 707, 152 S. W. 32; State v. McMullin, 170 Mo. 608, l. c. 632, 71 S. W. 221; State v. Phillips, 233 Mo. 299, l. c. 306, 135 S. W. 4.]''

Learned counsel for defendant did not request the court to rebuke counsel for plaintiff for the alleged improper argument and the trial court cannot be held to have committed error because of its failure to do something which it was not asked to do.

Counsel for defendant, had he felt that the alleged misconduct on the part of the attorney for plaintiff in point of fact tended to prejudice and would prejudice the jury against the defendant, and in favor of the plaintiff, had available a motion to discharge the jury

and declare a mistrial. Under the facts as disclosed by the record we will not predicate the granting of a new trial on this ground.

We have gone over the entire record and considered the assignments of error made on behalf of the appellant but find no prejudicial error, and we hold the judgment is for the right party and the judgment is accordingly affirmed. · *Reynolds, P. J.,* and *Allen, J.,* concur.,