DAN OSBY and WESTINGHOUSE ELECTRIC & MANUFACTURING COMPANY, a Corporation, v. G. L. TARLTON, Appellant.—85 S. W. (2d) 27.

Division One, June 26, 1935.

*Carter & Jones* and *Richard S. Bull* for appellant.

1242

*Joseph A. Rogers, Wilbur C. Schwartz* and *Charles E. Morrow* for respondents.

PER CURIAM:—Action for personal injury to plaintiff Osby. Verdict and judgment went for plaintiffs for $10,000, and unsuccessful in motion for a new trial, defendant appealed. Osby was, when injured, employed by plaintiff, Westinghouse Electric & Manufacturing Company, which company and Osby were under the Workmen's Compensation Act. Osby was awarded compensation and he and his employer join in this cause to recover, under Section 3309, Revised Statutes 1929, against the defendant, a third party and the alleged wrongdoer.

Plaintiff Osby was injured by a trailer, drawn by a tractor, being operated at the time by defendant's agent. Plaintiffs alleged five separate grounds of negligence which in substance are: (1) That

defendant failed to give a warning that the tractor and trailer were going to be moved at the time Osby was injured; (2) an alleged violation of the humanitarian rule; (3) that the operator of the tractor negligently started the same at a greater rate of speed than was reasonable under the circumstances; (4) that the defendant failed to have a man stationed at the rear of the tractor and trailer to keep a lookout and give warning of the movement and starting of the tractor; and (5) that defendant and his agent in charge of the tractor and trailer negligently failed to keep a vigilant watch to the rear of the tractor and trailer for persons or employees of plaintiff, Westinghouse Electric & Manufacturing Company.

The answer is a general denial and a plea contributory negligence on the part of plaintiff, Osby, and a plea that whatever injuries plaintiff Osby received, were caused by the negligence of the foreman of the Westinghouse Company, who, it is alleged, directed the driver of the tractor to move the same at a time when said foreman knew, or should have known, Osby was likely to be injured by the movement of the tractor, and at a time when the foreman knew, or should have known, that the driver of the tractor did not and could not see Osby, and did not and could not know that Osby was likely to be injured by the movement of the tractor and trailer. No reply appears to have been filed, but the cause was tried as though issue were joined on new matter in the answer.

Plaintiffs asked and the court gave no instructions for plaintiffs, other than one on the measure of damages. By withdrawal instructions given for the defendant, the court withdrew from the jury's consideration, all assignments of negligence except the first one, which charge of negligence, as it appears in the petition, is as follows:

"That the defendant, his agent and servant, the operator in charge of said tractor and trailer, negligently failed to give a warning to Dan Osby that the said tractor and trailer were going to be moved at the time and place hereinabove mentioned; and negligently and carelessly failed to give a warning of his intention to start said trailer and tractor at the time on said driveway west of plaintiff's factory."

Defendant makes seven separate assignments of error, but these may be grouped as follows: (1) That the court erred in refusing, at the close of the whole case, defendant's instruction in the nature of a demurrer to the evidence; (2) in submitting the case to the jury without instruction as to what facts the jury must find before they could return a verdict for plaintiffs; (3) improper conduct of counsel; and (4) that the verdict is excessive.

For convenience we shall hereinafter refer to the corporate plaintiff as the Westinghouse Company. Plaintiff Osby, when injured, was, as stated, employed by the Westinghouse Company, which company manufactured concrete electric light standards, or poles, at its plant, 3850 Bingham Avenue, St. Louis. The poles, at least those

mentioned in the record, were about twenty-nine feet in length and were, at the base, about thirty inches square, and about eight inches in diameter at the top. Defendant had a contract with the city of St. Louis to install electric light standards, and plaintiff Westinghouse Company, manufactured these and delivered them to defendant at its factory. Defendant transported the standards from the plant on what plaintiffs call "old iron wheel log wagons" drawn by Ford tractors. The wagons are, in the record, most frequently referred to as trailers and we shall so designate them. The Westinghouse plant was on the south side of Bingham Avenue and there was a concrete driveway about eighteen feet in width along the west end. Defendant's employees who delivered the standards to the places where they were to be installed, drove the tractor and trailer to the northwest corner of the plant and because of lack of space, detached the tractor and by hand placed the trailer on the driveway along the west end of the plant. The tractor, when the trailer was loaded, was backed in and attached to the trailer, and when ready to go and when directed, the driver drove out north. The front and rear wheels of the trailer which injured Osby were eighteen or twenty feet apart. The standards were loaded by an electric crane, two standards on each trailer, one with base end forward, and one with base end to the rear. When loaded, the standards on the trailer in question extended some four or five feet over the front and rear of the trailer. The tractor seat, occupied by the driver, was about eighteen inches forward from the end of the standards and when in the seat, the driver's head was lower, according to defendant's evidence, than the top of the forward ends of the standards. The standard with base end forward on the trailer that injured Osby was the west standard as loaded. The standards, when loaded, were secured so they would not slip on the bolsters in transit.

Did the court err in refusing to give defendant's peremptory request for a directed verdict at the close of the whole case? What may be termed the demurrer to the evidence, separately stated, covers Osby's alleged contributory negligence and the contention that there was no substantial evidence of negligence on the part of the defendant to justify a recovery under the first charge of negligence in the petition. Defendant requested and the court gave an instruction submitting the issue of contributory negligence, but defendant does not brief nor argue this question, hence, it will be considered as abandoned.

Plaintiff Osby, and other employees of the Westinghouse Company were engaged in washing concrete standards with a diluted acid solution and wore special clothes, rubber gloves and goggles to avoid injury from the acid. The acid was in bottles and these bottles were in crates, estimated to be from twenty to thirty-six inches square,

and these crates were placed on the outside and along the west wall of the building, and were immediately east of the trailer. It seems that there was one row of the crates on the east side of the driveway and against the wall of the building, and that there were a part of two other rows of crates immediately west of the row against the building. The width of the space between the west row of crates and the trailer was not definitely shown. Osby testified that this space was "pretty good room; it was roomy; enough for the wagon to miss the three rows of bottles." There was evidence tending to show that the width of this space was about two feet. Osby, according to his evidence, after the trailer was placed and loaded and after the tractor was attached and the driver in his seat ready to drive out when directed, came out of the building at a door in the west end thereof to get acid. He testified that "the front of the tractor was about even with the door" through which he came. He had a hand cart in which to put the bottles containing the acid, and after coming out at the door mentioned, he turned south between the tractor and the west row of crates for the purpose of getting one of the bottles of acid, which bottles were rather large. He testified that "as I passed the driver, I caught his eye. He didn't say anything to me and I didn't say anything to him. After passing him, I walked on back until I got to a point four or five feet in front of the right rear wheel of the wagon. I had just gotten the bottle on to the hand truck; I had to lean over to get my hand on the bottle and the other hand on the handle of the truck." While Osby was bent over and was facing about northeast, the tractor started up and the right rear wheel of the trailer struck Osby's right hip, knocking him down, and the right rear trailer wheel passed over his left knee, causing the injury complained of. Before starting up, the right rear wheel of the trailer was four or five feet south of Osby.

Defendant's evidence tended to show that the driver of the tractor, when seated in the driver's seat, could not see Osby at the time the tractor started up without raising himself up in the seat, standing, so to speak, on the clutch, but according to plaintiff's evidence, the driver of the tractor could have seen Osby, had he leaned over in his seat and looked back. Osby testified that at the time the tractor started up there was nothing between him and the driver to obstruct the driver's view, had he looked back.

The concrete question is: Was there any duty on the part of the defendant to warn Osby that the tractor was about to be started? It is conceded that the driver of the tractor did not give any warning that he was about to start. The standards were inspected by the city inspector and when he was satisfied with the standards loaded, he gave the order to drive out, and on the occasion when Osby was injured, the city inspector was on the west side of the trailer, and when

satisfied with his inspection, he called out "all right, get out," and the driver of the tractor started up.

It is contended by plaintiffs that defendant owed Osby and other employees of the Westinghouse Company the duty to exercise ordinary care to avoid injury to them and that, therefore, in the circumstances, it was the duty of the driver of the tractor to exercise ordinary care, to look and to give warning before starting up the tractor. Papic v. Freund (Mo. App.), 181 S. W. 1161, is a case similar in principle to the instant case. In that case, plaintiff was in the employ of the Terminal Railroad Association, and at the time of injury, was repairing a floor of the subway through which the automobiles of the defendant, laden with mail, passed. The subway mentioned is the Union Station subway in St. Louis. The subway lane in question was about 200 feet in length and ran north and south and was about twenty feet in width. Plaintiff was working about ninety-five feet north of the south entrance, and defendant's automobile ran upon him and crushed his leg. In that case, it was urged that the peremptory request for a directed verdict should have been given. In ruling the point the court said: "In such circumstances, the law devolves the duty upon defendants' driver to anticipate the presence of persons engaged as plaintiff was as within the range of reasonable probability, and to exercise due care in making observations to the end of rendering them reasonably secure from injury by being run upon," and cited in support, Ostermeier v. Kingman-St. Louis Implement Co., 255 Mo. 128, 164 S. W. 218; Lauff v. J. Kennard & Sons Carpet Co., 186 Mo. App. 123, 171 S. W. 986.

In Lauff v. Kennard & Sons Carpet Co., supra, plaintiff was injured by defendant's wagon being backed upon him so as to crush his leg. The driver of the team was delivering goods to a freight platform. Plaintiff had gone near the platform for the purpose of getting upon it, and while doing so, was injured. Plaintiff was in the employ of the transfer company and the driver of the carpet company was familiar with the situation because of the frequent trips he had made in hauling carpets to and from the depot. In that case, it was urged that a directed verdict should have been given for the defendant, but the court in passing on the point, ruled that when the circumstances, were considered, the precepts of ordinary care would require that defendant's driver should not only have made some observation of persons about to go upon or come from the platform at the time, but should have given a warning as well for their benefit and others likely to be there, and further, the court said: "The situation and the character of the place were such as to suggest it within the range of probabilities that an injury was likely to befall some one through being crushed by a wagon suddenly backed without warning or observation upon them. Obviously the law devolved the duty upon defendant's driver to anticipate the

presence of persons there and make observations and give warning, to the end of rendering them reasonably secure from injury or hurt. The character of the place and its use resemble a public street and the principle attending the use of the one applies with equal force to the other.''

■ The duty to exercise the care required by the law to avoid injury to others is not restricted to those in contractual relationship with the alleged wrongdoer, but this duty extends to those lawfully present, as for example, the servant of another who is where he has a lawful right to be in the performance of his duties. [45 C. J. 846; Cull v. McMillan Contracting Co. (Mo. App.), 178 S. W. 868.]

Defendant cites and discusses in his brief as supporting the contention that the peremptory direction should have been given Troll v. Ehrler Drayage Co., 254 Mo. 332, 162 S. W. 185; Heideman v. Kleine (Mo. App.), 210 S. W. 913; Herron v. High Ground Dairy Co., 153 N. Y. App. Div. 338; Chicago Consol. Bottling Co. v. McGinnis, 51 Ill. App. 325; Newman v. Barber Asphalt Paving Co., 190 Ill. App. 636; Barton v. Craighill (Pa.), 112 Atl. 96; Bowers v. Colonial Warehouse Co. (Minn.), 190 N. W. 609.

It is not necessary for us to here consider in detail the authorities cited by defendant as supporting his contention. Counsel for defendant proceeds on the theory that there was no duty on the part of the driver of the tractor to exercise any care for the safety of plaintiff and the other employees of the Westinghouse Company, unless and until the driver *actually knew* that some one was in a position of peril. We do not agree with this theory of the driver's duty. We think clearly that under the facts in evidence and under the law the question of the driver's duty to warn plaintiff was one for the jury, and that the trial court did not commit error in refusing defendant's request for a directed verdict.

■ Defendant assigns error on the ground that plaintiffs' case was submitted to the jury without instructions, except on the measure of damages. The point was first raised in the motion for new trial and came too late. [Young v. Wheelock, 333 Mo. 992, 64 S. W. (2d) 950, l. c. 956.]

■ Defendant complains of alleged misconduct of counsel for plaintiffs in the opening statement and the cross-examination of the witness Cross. In the opening statement counsel said that if the jury found that Osby was injured because of the negligence of defendant, then he would be entitled to a verdict, ''and at the same time you must consider when you return a verdict for him, that first this money will have to be paid back to the Travelers' Insurance Company.'' The reference was to what had been paid Osby under the Workmen's Compensation Law as the employee of the Westinghouse Company. Objection was made to this and the jury was in-

structed to disregard such statement. Counsel appeared as satisfied with the extent of the ruling as no further request was made.

On direct examination of the witness Cross it was disclosed that, at the time, he lived at Mineral Point, Missouri, and on cross-examination, it developed that he was born in Graniteville, Missouri, and that he had worked in New York and that he had not been in St. Louis all the time; that he had been "first one place and then another." Counsel for plaintiff remarked: "I was just wondering if Rykoff and Tarlton hired all out of town men on this work. It looked like it." Objection was made to this remark, and the court was asked to instruct the jury to disregard it and the court so in-structed, and so ended that. Counsel for plaintiffs then remarked: "But the taxpayers are paying that money." No objection was made to this last remark. Further on in the cross-examination of Cross, the record shows: "Q. Did you pay any attention to how bad Dan Osby was hurt? Mr. BULL: I object to that line of questioning, your Honor. THE COURT: I will sustain the objection. MR. SCHWARTZ: Did you find out whether Dan Osby was hurt? THE WITNESS: Well, I didn't know him. I knew he was a colored fellow, that is all. Q. Did you ever find out that the colored fellow that your wagon ran over was hurt? A. Yes, I knew he was hurt. Q. When and where did you find that out? A. Out there on Spring and Bingham that morning. Q. Did you ever make any further inquiry about him? MR. BULL: I make the same objection to this line of questioning about the man being hurt. It isn't proper cross-examination and it doesn't prove any issue in the case. He is trying to prejudice the jury. MR. SCHWARTZ: Unless he considers this darky a dog, he would certainly find out about this man. MR. BULL: Your own witness yesterday testified to that. MR. SCHWARTZ: That witness was Leffman, the city employee. He wasn't from Westinghouse. THE COURT: Proceed, I will sustain the objection." No further request was made and counsel again appears to be satisfied with the ruling. Absent and adverse ruling and exception thereto there is nothing before us for review. [Gann v. Railroad, 319 Mo. 214, l. c. 232, 6 S. W. (2d) 39; Anderson v. Sutton, 316 Mo. 1058, 293 S. W. 773.] The court sustained defendant's objection based on opening statement and directed the jury to disregard, and sustained the only objection made in the cross-examination of witness Cross. Defendant, if not satisfied with the extent of the ruling, should have suggested what further action was desired. There is nothing before us for review relative to the opening statement and cross-examination of Cross. [McKinney v. Martin, etc., Laundry Co., 198 Mo. App. 386, 200 S. W. 114.]

Defendant complains of conduct of counsel in rebuttal, or what counsel for plaintiffs call rebuttal. The record shows the following: Mr. Schwartz, counsel for plaintiffs said: "Sheriff, will you call

## 1250

Robert Fullerton, Jr.?" The sheriff complied, but Fullerton did not answer. Then Mr. Schwartz asked: "Who prepared this case for trial, Mr. Bull or Mr. Jackson?" Mr. Bull, counsel for defendant, thereupon, stated that the case was prepared by Mr. Hanke and himself. Then Mr. Schwartz said, "I will ask you this: Did you interview the witnesses in this case?" and Mr. Bull answered that he did. Then Mr. Schwartz said: "Did you interview Robert Fullerton, Jr.?" Mr. Bull: "I object to that, unless the purpose of it is stated." There was no ruling and no exception on failure to rule. Mr. Schwartz then asked: "Did you subpœna Robert Fullerton, Jr.?" Thereupon, Mr. Bull again objected for the same reason, but there was no ruling and no exception on failure to rule. Thereupon, Mr. Schwartz said: "Then, I will put counsel on the stand," and Mr. Bull said: "Mr. Schwartz has of course the right to call me to the stand, but I am warning you ahead of time that I am going to object to any question that don't tend to rebut any evidence that has been put on, or anything that is improper, or if anything improper develops through this examination, I am going to ask for a mistrial."

Mr. Bull was called to the stand and after stating that he was attorney for defendant, and that he participated in the preparation of the case, he was asked if he knew Robert Fullerton, Jr., and answered that he did, and that he had talked to Fullerton and that he believed that Fullerton was in the courtroom the day before, and that Fullerton was at the courtroom on Monday. Then he was asked if Fullerton was an employee of the Westinghouse Company or of Tarlton, the defendant. Mr. Bull objected unless the purpose was stated. There was no ruling and no exception on failure to rule. However, counsel for plaintiffs proceeded as though objection was sustained, and out of hearing of the jury, he stated for the record that he wanted to show that Fullerton was an employee of defendant and was in court Monday and Tuesday under subpœna by the defendant, and that Fullerton told him that he, Fullerton, would be in court "today;" that he had had the sheriff call Fullerton. and got no response and that Fullerton was not in the school where he attends and was not at home. Counsel for defendant objected to the offering on the ground that it was not rebuttal and was sustained. Then Mr. Schwartz, in the hearing of the jury, asked witness Bull to state whether or not Fullerton had been subpoenaed by the defendant. Objection was made and sustained. Then Mr. Schwartz asked Mr. Bull to state if, in his investigation and conversation with Fullerton and other witnesses, if two men were on the trucks. Objection was made and sustained. Then Mr. Schwartz asked Mr. Bull if he had seen Fullerton in court that morning. Objection was made, but no ruling and no exception on failure to rule. "Q. Did you tell him not to come down to court this morning?

MR. BULL: I make the same objection." There was no ruling and no exception on failure to rule. Then Mr. Schwartz asked Mr. Bull to tell the jury whether Fullerton was then in court. Objection was made and the court ruled: "I will sustain the objection to this line of questioning." Then Mr. Schwartz asked witness Bull, how old Robert Fullerton was, and objection was made and the court asked: "What is the materiality of it?," and Mr. Schwartz stated, "I want to get a mind picture of him." The objection was sustained.

There were no adverse rulings and no complaint on the extent of the rulings as to what occurred relative to the absent Fullerton, and again the record situation leaves defendant without ground for complaint. If defendant, in the instances where the court failed to rule, was not satisfied, it was his duty to make exception to the failure to rule. Not having done so he cannot complain.

Edward Koeneman, an attorney and associate counsel for plaintiffs was called to the stand by Mr. Schwartz who was conducting trial for plaintiffs, and was asked: "I will ask you to state whether or not you had any conversation with Robert Fullerton, Jr.?" The witness answered that he did. Mr. Bull asked that the answer be stricken out; that it was given before he had opportunity to object. "It doesn't tend to rebut anything given by the defendant; serves no purpose in the case." The court: "I don't know that. I will overrule the objection at this time." No exception was saved, but Mr. Bull stated that unless the purpose was shown for the line of questioning being indulged in, and shown to be relevant and material and proper rebuttal, "I object to the pursuance of this line of questioning . . . and I will ask for a mistrial and that the jury be discharged." On this objection, the court ruled: "At this time, there is nothing to indicate what the purpose of the examination is going to be and I will overrule the objection." Exception was saved. Then Mr. Schwartz asked: "Did you, before yesterday, know Robert Fullerton, Jr.?" And the witness answered that he did not. After the answer, Mr. Bull said, "same objection; same motion." The court overruled the objection and denied the motion, but no exception was taken. Then Mr. Schwartz asked: "On yesterday, was Robert Fullerton, Jr., subpoenaed in court here? MR. BULL: Now, I object to that. THE COURT: This may be the ground work for something else. MR. BULL: I object to counsel's persistence in questioning on matters that are not proper rebuttal, and I now ask that this jury be discharged. This matter is getting in to prejudice the jury against the defendant. I will ask that a mistrial be declared. THE COURT: I will overrule the objection. Answer, yes or no." No exception taken. MR. SCHWARTZ: "Read the question." The question was read and the witness answered, "yes." After the answer was given, Mr. Bull said: "I object to

that as hearsay." There was no ruling and no exception. MR. SCHWARTZ: "If you tell me you have got a subpœna, that is hearsay? THE WITNESS: My answer is yes." MR. BULL: "Q. How do you know that? A. He told me. MR. BULL: I move the answer be stricken out as showing it is based on hearsay, and ask that the jury be instructed to disregard it. THE COURT: The jury are so instructed." MR. SCHWARTZ: "Q. I will ask you to state whether or not you subpoenaed him? A. I did. Q. Did you prepare a subpoena for him? A. I did. MR. BULL: Let the record show the same objection being made. MR. SCHWARTZ: Tell the jury whether or not you talked to him over the telephone or in person, in the courtroom. THE WITNESS: Over the telephone. Q. Did you prepare this case to subpoena the witnesses, and so forth? A. Yes, sir. Q. Did you have his name? A. I did not. Q. Who is he employed by? A. G. L. Tarlton. MR. BULL: I specifically object to that question; I had no opportunity to object before the answer was given. I move the answer be stricken out for the reasons heretofore given. THE COURT: I will overrule the objection. MR. BULL: Save my exception. MR. BULL: I again object to the further pursuance of this same line of questioning and the overruling by the court of the objections to the questions and answers, and I again move a mistrial be declared and this jury discharged for the reason that these questions are intended and designed and their purpose is to cause the jury to be prejudiced against the defendant. THE COURT: I will overrule the motion. MR. BULL: Save my exception. MR. SCHWARTZ: Q. State whether or not you prepared a subpoena for him. THE WITNESS: I did. Q. And following the preparation of that subpoena, what did you do in the way of endeavoring to serve it. MR. BULL: I make the same objection and the same motion. THE COURT: I will sustain the objection."

After the above, Mr. Schwartz stated for the record and out of hearing of the jury: "I expect to show by this witness, if he were permitted to testify, that he prepared the subpoena and talked to this man, and that he told him he would wait for him out at his house, and he went out to his house where he lived, and there talked to his father, and his father said that he had been subpoenaed and gone down to court and that he would be down here Wednesday morning in court. MR. BULL: I object to that as hearsay. THE COURT: I will sustain the objection."

It will be observed that there are only three instances where exception was taken by defendant in the examination of Koeneman. The witness was asked if he had a conversation with Fullerton, and answered that he did, before counsel could object. After the answer, counsel asked that it be stricken, stating that the answer came be-

fore he had time to object. The request was denied, but no exception was taken. Thereupon, counsel for defendant, after making some observation about the character of inquiry by counsel for plaintiffs, made objection to the line of inquiry, and asked for a mistrial and discharge of jury. On this, the court ruled that at that time, there was nothing to indicate what the purpose of the examination was going to be and overruled the request for a mistrial and discharge of jury, and to this ruling, defendant saved exception. But at that time, as the record shows, there was nothing before the court to show the character of inquiry of Koeneman. After the court had ruled, the witness was asked if he knew Fullerton prior to the day before, and answered that he did not. After the answer, counsel for defendant said: "Same objection, same motion." It is not clear just what objection or what motion was meant. The court overruled the objection and denied the motion, but no exception was taken. The witness was asked if Fullerton was subpoenaed in court yesterday. Objection was made and also a request to discharge the jury. These were denied, but no exception. After the witness had answered that Fullerton was subpoenaed in court the day before, counsel for defendant said: "I object to that as hearsay." There was no ruling and no exception on failure to rule. Then it was disclosed that what the witness knew about Fullerton being subpoenaed was hearsay, and on motion, it was stricken. The examination continued, either without objection or without ruling and without exception when the court failed to rule, until the witness was asked by whom Fullerton was employed. The witness answered that Fullerton was employed by the defendant. Motion was made to strike and was denied and exception saved. Then counsel for defendant moved for a mistrial and discharge of jury, but these were denied and exception saved. Then witness was asked, without objection, if he prepared a subpoena for Fullerton and answered that he did, and then he was asked what he had done towards serving. Objection was made and sustained.

A reading of the record as to what occurred on the examination of Koeneman discloses that the only points preserved for review are that the court permitted proof that Fullerton was employed by defendant and refused to discharge the jury when that proof came in over objection. We must take the record as it is. The trial court should not be ruled in error by implication. It is the duty of counsel to protect his client unless the misconduct of the offender is such as to make it the duty of the court to interfere *sua sponte*. [64 C. J. 284.] We do not approve of the conduct of counsel, but in the record situation, we do not think the conduct complained of is of such gravity as to justify convicting the trial court of reversible error. [Peters v. Matthews, etc., Express Co. (Mo. App.), 51 S. W. (2d) 139; Gann v. Railroad, supra; Anderson v. Sutton, supra;

Adams v. Railroad, 287 Mo. 535, 229 S. W. 790; Stephens v. Eldorado Springs (Mo. App.), 190 S. W. 1004, l. c. 1006; Ray County Sav. Bank v. Hutton, 224 Mo. 42, 123 S. W. 47.]

Defendant complains of alleged prejudicial argument on the part of counsel for plaintiffs in the closing argument. Some page or more of the argument appears in the record. Counsel talked about "fellows coming in from out of town, who come in here and bounce out again. . . . The taxpayers of this city pay for the work and other people get the work. This makes me mad when they come in here and tell you a thing of this kind. . . . Our suit is for $10,000. Of that, he has to give back the compensation he was paid by the Westinghouse Company and he only gets the balance." Objection was made only to that part of this argument relative to what Osby would have to return, and the jury was instructed to disregard such argument. Our ruling, supra, on the conduct of counsel will suffice here. Counsel made no further request, and cannot complain.

■ Defendant urges that the verdict is excessive. Osby was injured July 12, 1928. The trial was had April 25, 1932. An X-ray taken on the day of injury showed the patella out of line, a compound fracture, "broken in several different places." Osby's leg was put in a cast after an operation separating the muscles and bringing the broken bone portions together. The bones were held in place by a wire passing through holes drilled in the bone. The patella was broken "in two in the middle. The lower half was broken in three pieces, and one piece of the patella was crushed and sticking through the skin." Osby was in the hospital several weeks, and went back on November 14, 1928, to have the wires removed. He was in bed practically all the time after leaving the hospital until he returned to have the wires removed. Osby, concerning his condition at the time of trial, testified: "At the present time I suffer pain; I can walk about thirty minutes, then it hurts me right at the top of this patella and this fat right across here (indicating). I can't do much bending of my left leg at the knee; I can't bend it like I did before. The knee is stiff and don't bend; that bending is all I can get (indicating). I can't bend it sideways without moving my hip. After walking I can't pick my leg up high enough to make a clear step; it swells and stays swollen all night, and in the morning it will still be swollen. . . . I am not able to do the work that I was doing prior to the accident, and cannot move about like I did. I am not able to get up and down from wagons." He suffered considerable pain; was given an anaesthetic at each operation. At the time of the injury, he was thirty-two years old and was earning $22 a week. Dr. William H. Walters, who treated Osby and operated on him, was a witness and testified at the time of the trial that Osby had about seventy-five per cent flexion in the injured knee, that is about twenty-five per cent loss in the use of the leg, and that the

condition was permanent, and that the loss of use and motion of his left knee was permanent; that there was stiffness in the knee and leg motion. Dr. Walters also testified that the reasonable value of hospital service for Osby would be $400, and that the reasonable value of his services was $500. An assignment on excessive damages where there is room for argument is always troublesome. There is no definite rule to guide. Comparison with other cases is resorted to, but this is not always satisfactory. The finding of the jury and the action of the trial court does and should have great weight in ruling an assignment on excessive damages. [Mabe v. Gille Mfg. Co. (Mo. App.), 271 S. W. 1023.] In Spencer v. Railroad, 317 Mo. 492, 297 S. W. 353, the injuries, it would appear, were more severe than Osby's. Plaintiffs cite the Spencer case among others to support the verdict. In that case, the judgment was affirmed on condition of *remittitur* so as to reduce the judgment to $10,000. Every assignment on excessive damages must be determined on the particular facts obtaining. Under the facts here, we are constrained to rule that the verdict is excessive. Plaintiff, according to the evidence of Dr. Walters, had only a deficiency of twenty-five per cent in the injured leg. If plaintiffs will, within ten days, file here a *remittitur* of $4,000 the judgment for $6,000 will be affirmed as of the date of the filing of this opinion, otherwise, the judgment will be reversed and the cause remanded. It is so ordered.