C. A. DAWES v. D. E. WILLIAMS and MATILDA WILLIAMS, Appellants. —40 S. W. (2d) 644.

Division Two, July 3, 1931.

*W. L. Cole* and *T. P. Hukriede* for appellants.

*James Booth* for respondent.

682

FITZSIMMONS, C.—Defendants are husband and wife. This is an appeal from a decree of the Circuit Court of St. Louis County, setting aside a conveyance of certain land in Owensville, Gasconade County, standing in the name of defendant, Mrs. Matilda Williams, and subjecting it to a lien of a judgment of plaintiff against her husband, defendant, D. E. Williams. The suit was begun in Franklin County, but on application of defendants the venue was changed to St. Louis County.

The petition charges: Defendant D. E. Williams sold a tract of land owned by him, situated in St. Louis County and containing 42.85 acres for $25,000, and thereupon defendant Williams became indebted to plaintiff in the sum of $1,250 for services rendered in procuring the purchaser. Plaintiff on February 18, 1926, sued defendant Williams in the Circuit Court of Franklin County, for the debt alleged, and on May 18, 1926, while the action was pending, and when both defendants had knowledge of the pendency of the action, defendant Williams bought from Robert J. Horsefield, Jr., and wife, for a consideration of $15,000, certain described real estate situated in the city of Owensville, Gasconade County, Missouri, and known as the Gasconade Theatre. Plaintiff recovered judgment in the sum of $1,286.25 upon the debt sued for in the Circuit Court of Franklin County on August 12, 1926. The sum of $500 has been paid upon the judgment, but the balance was due and unpaid. A transcript of the judgment was of record in Gasconade County, and the petition alleged that in equity and good faith the judgment was a lien upon the Gasconade Theatre property, it being charged that the defendants, for the purpose of hindering, delaying and defrauding the creditors of defendant, Williams, and particularly plaintiff, had caused the Horsefields to convey the theatre property to defendant Matilda Williams. The petition further charged that D. E. Williams was insolvent and that plaintiff

had no adequate remedy at law. The prayer was that the deed from the Horsefields to defendant Matilda Williams be set aside and that the theatre property be made subject to the lien of plaintiff's judgment.

The answer admitted that defendants were husband and wife, and denied all other allegations of the petition.

The judgment in favor of plaintiff and against defendant Williams was proved by the records. By deeds and by records, plaintiff established these further facts, which were not disputed: On April 16, 1918, Valley Park Realty Company by its trustee, sold a tract of land in St. Louis County to Warren W. Goran, for the consideration of $9,960. On May 31, 1921, defendant D. E. Williams, as lessor, leased to Goran, as lessee, for a term of twenty years, what was described in. the indenture as Williams' undivided one-half interest in the land which Goran had acquired in 1918. It was a white sand mining lease. Goran was to work the property and was to pay Williams a royalty of five cents per ton for all sand mined, removed and sold. On August 21, 1925, Goran and wife by deed conveyed to defendant Williams 42.85 acres of the St. Louis County land, which Goran had bought in 1918 and which Williams had leased to Goran in 1921. On December 21, 1925, defendants D. E. Williams and Matilda Williams, his wife, conveyed the tract of 42.85 acres of land, which Williams had acquired from Goran, to Hardstone Brick & Tile Company for a consideration of $25,000. On May 18, 1926, Robert J. Horsefield and wife, by deed, conveyed to defendant Matilda Williams; the Gasconade Theatre in Owensville, Gasconade County, upon which plaintiff has sued to establish a lien for the satisfaction of his judgment. Defendant, Williams, admitted his insolvency by testifying that his total worth was $1.15.

On this record it would seem that a decree would go as a matter of course. But defendants contend that the money with which defendant Dr. Williams (a practicing physician) bought an undivided one-half interest in the St. Louis County land, and took 42.85 acres of it for his partitioned share, belonged to Mrs. Williams. It was the increase of $1500 or $2,000 which she had inherited years before. She married Dr. Williams in 1902, when she was a school teacher twenty years of age, and he was a medical student. She entrusted her inheritance to him, as a confiding wife should. He invested $2,200 for her in a farm in Reynolds County. Later this was sold at a profit of several thousand dollars and a farm in Laclede County was bought, held for a time, and sold, and on this deal, Mrs. Williams "made quite a bit also." Mrs. Williams testified that "the money realized from these investments was what went into the purchase of the sand bluff at Pacific," that is, into the land which Goran bought for $9,960 in 1918, for himself and Dr. Williams, in equal shares. Out of the handsome profit which

Mrs. Williams made upon the sale of the sand bluff at Pacific through the investing and selling agency of her husband, Mrs. Williams bought with her own money the Gasconade Theatre at Owensville. In this view of the case, plaintiff should not have a lien upon the theatre for the satisfaction of his judgment against Dr. Williams.

But the trial chancellor with all the parties before him searched their consciences and gave a decree for plaintiff. We can but search the printed record to see whether he had reason for his judgment. Many lights and shadows change the appearance and the effect of the picture painted by the defendants.

Both Dr. and Mrs. Williams knew of Mr. Dawes's suit against the Doctor for $1250 soon after it was filed on February 18, 1926. The sheriff of Franklin County made service by delivering a copy of the writ and petition to Mrs. Williams at their home in Pacific, and Dr. Williams heard of the suit from his lawyer. The money derived from the sale of the sand bluff at Pacific was then in hand, for the Gasconade Theatre at Owensville was not bought until May 18, 1926, three months later. Mrs. Williams testified that her inheritance of $1500 or $2,000 came from her father and grandmother. But her father died when she was four years old and her grandmother died when Mrs. Williams was twelve years old. She testified that she received five or six hundred dollars from her father; that her grandmother was worth $50,000 when she died, and that she, Mrs. Williams, derived the remainder of her first capital from the grandmother's estate. But the records of the Probate Court of St. Louis County showed that Mrs. Williams received only $259.74 upon final distribution of the grandmother's estate. Under the operating lease of the sand bluff by Williams to Goran, the Doctor received royalties amounting to $5,000 which the Doctor spent. Out of the sale price of $25,000 which was received from the Hardstone Brick & Tile Company for the sand bluff at Pacific, Dr. Williams kept at least part of it for himself. Mrs. Williams thought that he kept about three or four thousand dollars. The doctor believed it was about $5,000, out of which he paid off a deed of trust for $2,500 on the Gasconade Theatre. Mrs. Williams knew that the deed of trust had been paid off, but she was not certain how it had been paid. It is quite clear from the record that, during the years that the defendant Dr. Williams was investing and reinvesting funds which both defendants claim were derived from Mrs. Williams's inheritance, the Doctor kept the moneys in his own name in the bank. He exercised complete dominion over the properties purchased, and decided questions of sales as if the lands were his own. There were no accountings between the defendants. As Mrs. Williams said: "We never kept any account of the money of mine the Doctor had." But after the sale in December, 1925, for $25,000,

of the sand bluff at Pacific, title to which was in Dr. Williams, the defendants seem to have put their financial affairs on a more businesslike basis. The Doctor turned the money over to Mrs. Williams a few days following the sale. She deposited it in St. Louis banks, and she was able to exhibit her checks which she had delivered to the Horsefields in payment for the Gasconade Theatre in Owensville, the deed for which ran to her. This seems to have been the only investment about which the Doctor had consulted her. And the money derived from the sale of the sand bluff appears to be the only funds derived from a sale which were put under her control. Mrs. Williams was asked: ''Since you have been married, have you been transacting any business in your own name until this property was bought here in Owensville?'' Her answer was: ''No, sir.'' Both defendants admitted freely that money derived from the sale of the sand bluff was used to purchase the theatre. Mrs. Williams did not make any assessment returns or pay any property taxes upon the investments, which she said the Doctor made for her. Nor did she pay any income taxes upon the profits of the turnovers. The Doctor paid the income and all other taxes, he explaining that the property was carried in his name and it gave him a better standing in the community. He made property tax returns from 1923 to 1926. But the latter year, which was the year of the plaintiff's suit for debt, his personal list showed only $100 of household furniture. Certain minor collateral matters brought out at the trial may be mentioned without comment. Of these is the purported sale by the Doctor to his wife for cash, of his shares of stock in two banks, of one of which he was president, without transfer of the stock upon the books of the banks. Then there were two automobiles which he had listed in his assessment returns and which he used in his practice, but which he testified belonged to his wife and son, the cars having been bought by them with their separate funds. By these explanations he arrived at his net worth of $1.15. And Mrs. Williams by her testimony supported him in his statements about the bank stock and the automobiles. More might be said of the case as made. Suffice it to say that the record, viewed in the light of the settled law applicable to cases of this kind, upholds the decree of the chancellor.

I. Defendants assign as error the action of the trial court in receiving in evidence on behalf of plaintiff the deposition of Dr. Williams as an admission against the interest of Mrs. Williams and  the deposition of Mrs. Williams as an admission against the interest of Dr. Williams. As far as the record shows the depositions were admitted as admissions against the interests of the respective deponents. It has long been held that the deposition of a defendant

taken in the cause may be read in evidence by the plaintiff, if relevant as an admission of defendant, though he is present and willing to testify. [McCaslin v. Mullins (Mo. App.), 17 S. W. (2d) 684; Mahon v. Fletcher's Estate (Mo. App.), 245 S. W. 373; Bogie v. Nolan, 96 Mo. 85, 9 S. W. 14; Pomeroy v. Benton, 77 Mo. 64.] Neither husband nor wife, in the depositions, testified to any admission or confidential communication of the one to the other.

II. When courts, in search of fraud, come upon deals between husband and wife, they scrutinize them with a jealous eye. They may not assume fraud but they may infer it from facts and circumstances. Those at whose door the charge of fraud is laid disavow it always and make hard the way of him who would prove it. And the most difficult cases in which to determine whether there is or is not fraud, are those involving transfers and conveyances from a husband, pressed by creditors, to his loyal wife. [Daggs v. McDermott, 34 S. W. (2d) 46; Zehnder v. Stark, 248 Mo. 39, 154 S. W. 92; East St. Louis Ice & Cold Storage Co. v. Kuhlmann, 238 Mo. 685, 142 S. W. 253; Cole v. Cole, 231 Mo. 236, 132 S. W. 734.] But, as this court said in Zehnder v. Stark, supra: "He would be a dull observer of the affairs of mankind whose powers of comprehension and appreciation were so *in vacuo* that he did not recognize the relation of husband and wife as affording a convenient and much-used cover for transactions designed to screen property from creditors. Accordingly when in pursuit of fraud courts eye such transactions with jealousy to see they do not hide and consummate fraud, the latter being easy to accomplish and hard to prove."

The trial court in the instant case has before him the parties. He observed the witnesses on the stand, their manner of testifying and was in a better position to weigh their credibility than we could be. We should therefore defer to his ruling under the showing made. [Barnard v. Keathley, 230 Mo. l. c. 236, 130 S. W. 306; Bryant v. Stahl (Mo. Sup.), 217 S. W. 31; Creamer v. Bivert, 214 Mo. 473, 113 S. W. 1118.] Defendants, in support of their appeal, contend that the money, being originally the separate estate of the wife, furnished a good consideration for the transfer to her of the Gasconade Theatre property as against the creditors of her husband. A husband may manage the separate property of his wife without necessarily subjecting it or profits arising from his management to claims of his creditors. The cases which defendants cite abundantly support these unquestioned truths of the law. But they have no application to the instant case, because they are predicated on the assumption that all the business investments which Dr. Williams made were for his wife with her inheritances in the first instance and with the avails and increases in the later and larger operations. In the nature

of things the chancellor by granting a decree to plaintiff, registered his want of faith in these assumptions. And upon the record presented, it is not for us to gainsay the chancellor. The case bears a striking resemblance to the facts in East St. Louis Ice & Cold Storage Co. v. Kuhlmann, 238 Mo. 685, 142 S. W. 253, in which a similar decree was affirmed.

Finding no reversible error the judgment and decree is affirmed. *Cooley* and *Westhues, CC.,* concur.

PER CURIAM:—The foregoing opinion by FITZSIMMONS, C., is adopted as the opinion of the court. *White, P. J.,* and *Ellison, J.,* concur; *Henwood, J.,* concurs in the result.