STATE OF MISSOURI at the relation of HORTENSE BROSNAHAN, Relator, v. HOPKINS B. SHAIN ET AL., Judges of the Kansas City Court of Appeals.—126 S. W. (2d) 1193.

Division One, April 1, 1939.

*John T. Harding, David A. Murphy, R. Carter Tucker* and *John Murphy* for relator; *Harding, Murphy & Tucker* of counsel.

*S. L. Trusty, Edward E. Pugh, C. W. Terry* and *Guy W. Green, Jr.,* for respondents.

HAYS, P. J.—Certiorari to the Kansas City Court of Appeals bringing up the opinion and judgment of that court in the case of Lola G. Powell (plaintiff), respondent, v. Hortense Brosnahan (defendant), appellant. Plaintiff's action, brought under the wrongful death statute, was for damages for the death of her husband, James E. Powell, alleged to have been caused by the wrongful act and negligence of the defendant. Plaintiff prevailed in the trial court and the judgment was affirmed by the Court of Appeals. The case is here by reason of alleged conflict between the opinion rendered by that court and the latest controlling decisions of this court. In such situation we are required to look to the questioned opinion for the facts so far as may be necessary to a determination of the sole question of conflict.

As appears from respondents' opinion the facts are in substance as follows: James Powell met his death on the first Wednesday in November, 1934, as a result of being run over by an automobile which was being backed out of the private driveway located on the residential premises of defendant Brosnahan and her husband, situate in Kansas City. No one saw the collision. The driveway (concrete and 9½ feet in width) ran east from their private garage, located at the west line of the property, to the street on which the property fronted, a distance of about 100 feet. The Brosnahan residence and front porch abutted the north edge of the driveway. The distance from the front porch to the street sidewalk was approximately 100 feet. It appears that from the front porch line to the street the driveway sloped downward until it reached the sidewalk at the street, and to meet the requirements of the grade of the driveway there were curbs or walls on each side thereof, beginning at the porch line and graduating in height from some 6 inches there to about 21 inches at a point a few feet from the sidewalk where the driveway flattened out. The collision occurred at a point 32 to 42 feet west of the sidewalk, when the rear end of the backing automobile struck the front end of a pushcart being operated on the driveway by plaintiff's husband, Powell, a trashman in the

employ of one of the agents of an association which, through its agents, employed laborers to periodically collect and dispose of trash for its members. Under said arrangement it was the practice of a trashman to come once a month on Wednesdays (inferentially on the first Wednesday of each month, as the collision occurred on November the seventh), and by means of a pushcart operated over the driveway (the only way) to the rear of the premises for the purpose of collecting rubbish. There was evidence pro and con as to ordinary use of the driveway by deliverymen in making deliveries to the rear of the house.

Shortly before one P. M., on the day in question the defendant had occasion to take her small daughter to school, some 20 blocks distant, and had only five minutes to get there. She left the house by the rear door and proceeded on the driveway to the automobile, then standing outside the garage and facing it. Just before entering the car she looked and saw the driveway was clear to the street and no one was approaching it. She entered the car, started the motor, exchanged greetings with a next door neighbor, sounded the horn for the daughter then in the house, talked to the neighbor a few minutes, and again sounded the horn. The daughter immediately came and entered the car; defendant then looked in the rear-vision mirror, obtained a plain view of the driveway to the east and saw it was clear—nothing on it. She started backing the car, in gear, slowly down the driveway, with her head out of the window on the left hand or driver's side of the car, looking along the elevated curb and a portion of the driveway as far as the street, and as the car proceeded nothing came on or in the driveway within her vision. When the rear end of the car came about even with the front line of the porch she heard a noise or crash at the rear of the car. She immediately stopped the car. She had traversed about two feet in stopping the car upon hearing the noise. She and the little girl got out and walked around the car, where, for the first time, she saw the deceased who was lying on the north side of the driveway at a distance of 22 to 30 feet from the street sidewalk.

Defendant deposed that on former monthly clean-up days she had seen a trashman coming on the premises. She testified that on the day in question she had seen a trashman nearby on the street and assumed he would be in to collect the trash as that was the day for collecting it. Immediately after the crash it flashed in her mind it might be the trashman she collided with, or the little automobile which the child next door played with.

Plaintiff's petition contained four charges of specific negligence, relating to (1) defendant's failure to maintain a reasonable lookout; (2) negligently failing to give sufficient warning; (3) negligently failing to keep the automobile under reasonable control and negligently operating it at a dangerous speed; and (4) negligently backing the car without giving reasonable warning or maintaining a reasonable lookout when she knew, or could have known, that the backing auto-

mobile might cause injury to said Powell. Plaintiff also pleaded a fifth charge of negligence, by which she attempted to invoke the humanitarian doctrine as it has been applied to situations of both discovered peril and discoverable peril.

Defendant's answer was a general denial and plea of contributory negligence.

At the close of all the evidence in the case, defendant offered an instruction in the nature of a demurrer to the evidence, which was by the trial court refused, to which refusal the defendant excepted at the same and saved her exception and the same was duly preserved in motion for new trial.

■ The case went to the jury on plaintiff's Instruction No. 3 which purported to cover the case in its entirety as pleaded (including both primary and humanitarian negligence) and to exclude the defense of contributory negligence. The Court of Appeals upheld the instruction as being a correct and proper declaration of the humanitarian rule of law alone as it relates to discoverable peril and as applicable to the facts in suit. The defendant assails it as being incorrect and improper in several respects and plaintiff (for the respondents) counters, first with the suggestion that, irrespective of the propriety of said instruction, defendant waived all its faults, if any it has, by hypothesizing the converse of it in her Instructions U and W of which U was given as offered and W was offered and not given as offered but given as modified by the trial court.

With respect to this matter of waiver, or express aider, cited for respondents are Phillips v. E. St. Louis, etc., Ry. Co. (Mo.), 226 S. W. 866; Crews v. K. C. Public Service Co., 341 Mo. 1090, 111 S. W. (2d) 54; and State ex rel. v. Ellison, 271 Mo. 463, 196 S. W. 1088, l. c. 1089.

Unquestionably these authorities correctly announce and apply the well-settled general rule, but to records so greatly different from the record here as to require no discussion of them in this connection. It has been seen that the petition in this case, as framed, comprehended several charges of primary negligence together with a charge of negligence under the humanitarian doctrine in relation to discoverable peril; and also been seen that to the denial of defendant's final demurrer the defendant objected, excepted and saved and preserved the exception. Not only this appears but more: Next, defendant exhausted her resources by offering (without success) an instruction on contributory negligence before offering her aforesaid converse instructions. So even though defendant's Instructions U and W were the converse of plaintiff's No. 3, defendant's obtention of the former and offer of the latter constituted no aider or waiver of error, if any, in the trial court's giving of plaintiff's No. 3. In situations similar to this we have held such course as this defendant pursued to be a proper exception to the general rule. [Elkins v. St. Louis Pub. Serv. Co., 335 Mo. 951, 74 S. W. (2d) 600; Clancy v. St. Louis Transit Co.,

192 Mo. 615, l. c. 652, 91 S. W. 509; Behen v. Transit Co., 186 Mo. 430, 85 S. W. 346.]

For respondents it is asserted that the relationship (invitor and invitee) between Powell and the defendant created a duty resting on her of discovering him and avoiding injury to him. The decisions of this court which are cited on this point (Osby v. Tarlton, 336 Mo. 1240, 85 S. W. (2d) 27, 30, and Hubbard v. Wabash Railroad Co. (Mo.), 193 S. W. 579) were decided upon the issue of primary and contributory negligence. Those cases seem to have no relevancy to this proceeding except, perhaps, in so far as they would authorize the submission of same on that theory.

It is in effect argued for respondents that defendant was under a duty to keep a lookout for the trashman at the particular time because she was expecting him. State ex rel. v. Ellison, 271 Mo. 463, 196 S. W. 1088, is cited in support. The humanitarian doctrine was not involved in that case. It, too, was decided on primary negligence.

A number of decisions of the Courts of Appeals are cited for respondents. Needlessly so, for they are not properly for the consideration of this court on certiorari for conflict, nor are the cited law cyclopedias. We have examined all the decisions of this court that are cited by respondents and have found that not one of them similar or analogous on the facts to this proceeding, or to this situation, was ruled on the humanitarian doctrine as the same is applied to discoverable peril.

As the latest controlling decisions of our court, Haines v. Bridges Asphalt Pav. Co. (Mo.), 55 S. W. (2d) 431, is invoked for the respondents, while Mayfield v. Kansas City Southern Ry. Co., 337 Mo. 79, 85 S. W. (2d) 116, is chiefly relied on by the relator. As a basis for the application of these authorities a reduction of plaintiff's Instruction No. 3 is here required. It is very lengthy, consisting of six numbered, connected and interrelated paragraphs which we compress to some extent, as follows:

Paragraph (1) hypothesizes: that if the jury found that what Powell was doing in so using the driveway was pursuant to the arrangement made therefor and for the purpose thereof, that such use was customary and known to defendant, the jury were instructed: (2) that he had a right to use the driveway on this occasion for said purpose; (3) then it was the duty of Mrs. Brosnahan, when backing her automobile over the driveway on the occasion in question, to exercise ordinary care to discover and avoid injury to such persons as might likely be using said driveway and in peril of injury and to give reasonable warning of peril to such persons in a reasonable effort to avoid such injury; and (4) if the jury found that while the automobile was being backed eastward at the time he was going up said incline, and that while he was so doing a position and situation of imminent peril was arising and did arise, and that he would be injured by the car unless it

was stopped, or unless reasonable and timely warning was given him, and that he was unaware of his danger until it was too late for him to escape therefrom; and ''(5) If the jury should further find that by exercising ordinary care the defendant could have known thereof or by such lookout have discovered such peril in time by the exercise of ordinary care to have thereafter given the deceased reasonable and timely warning,'' and that such reasonable and timely warning would have avoided the injury to plaintiff's husband and his death; and (6) if the jury further find that defendant failed to exercise such care and to do those things she was guilty of negligence; and if her failure to do them caused Powell's injury and death, the verdict must be for plaintiff, notwithstanding his negligence, if any, in the premises.

The discussion in respondents' opinion which we are about to review starts out by laying down the settled rule that the duty owed by the occupier of premises to a business invitee is that of exercising ordinary care for his safety. Upon this, conclusion was announced that under the facts *"there was a duty on the part of the defendant to have kept a lookout and that if she did look she looked negligently."*

The opinion, and likewise the instruction, predicates these duties upon the arrangement made for trash removal and alleged custom relative to the same, both of which were known to defendant. Then, after setting out the instruction the opinion assumes to draw from the evidence an inference that at the time she backed the car she was expecting a trashman. It is plain that all this pertained only to primary negligence and to the particular facts of the particular case. ''A charge that failure to keep a lookout is the proximate cause of an injury, whether the duty to look arises either because of the place or because of the circumstances, is a charge of primary negligence, but it is not humanitarian negligence.'' [Mayfield case, supra, 337 Mo. l. c. 91, 85 S. W. (2d) l. c. 123.]

This failure to look, or negligent looking, if governed by user, was held by this court to have no bearing upon the right to recover under the humanitarian rule as extended to discoverable peril, where the requisite humanitarian duty to keep a lookout existed. In the Mayfield case, supra (337 Mo. l. c. 92, 85 S. W. (2d) l. c. 124) we said in this regard: ''However, if there was such user, the applicability of the humanitarian rule to discoverable peril at the place does not depend upon whether the engineer was actually looking, or whether the train had lights, or whether its bell was working. The duty becomes a continuous duty to keep a lookout every time the place is approached, regardless of the circumstances of the particular occasion, and they have nothing to do with determining whether there is humanitarian negligence in injuring some one who could have been seen but is run over at such place without being seen.''

So far as discoverable peril is concerned, the case rests upon a mere showing of ''circumstances from which there would arise a duty to be

on the lookout at that particular place or at that particular moment only.'' [Mayfield case, supra, 337 Mo. l. c. 93, 85 S. W. (2d) l. c. 124-125.] Respondents, in seeking to distinguish that case from the present one, assert that here a ''general duty, not based upon the violation of another duty on a particular occasion, required the defendant to keep a lookout for *all* business invitees likely to be on the driveway.''

We held in the Mayfield case that where there is a duty to keep a lookout, extending the humanitarian rule to discoverable peril as well as to discovered peril, ''the places . . . are either public places, or in the nature of public places because they are frequented and used by many people.'' Osby v. Tarlton, 336 Mo. 1240, 85 S. W. (2d) 27, l. c. 30, cited for respondents, announces the same established rule thus: ''Obviously, the law devolved the duty upon defendant's driver to anticipate the presence of persons there and to make observations and give warning, to the end of rendering them reasonably secure from injury or hurt. The character of the place and its use resemble a public street, and the principle attending the use of the one applies with equal force to the other.''

Now, with regard to custom, or user. This was merely a usual practice of a trashman to come on the premises once a month as stated. It is not of the sort of user that comes within the extended humanitarian rule as to discoverable peril; because, in this instance, essentially it consisted merely in a series of previous sporadic entrances by deliverymen or by trashmen upon private property.

The conclusion is inevitable, it seems, that the opinion under review is in conflict with the Mayfield decision and others of this court, with respect both to general principles of law announced and applied, and to analogous facts to which they were applied. We have not overlooked the Haines case, supra, cited for respondents and by them chiefly relied on. Since it is misrelied on and since it recognized and applied the same doctrine of public place, or place in the nature thereof, no good purpose would be served by discussing it.

Let the opinion and record of the Court of Appeals be quashed. All concur.