Robert C. WHITE, Appellant,

v.

Raymond BURKEYBILE, Hershell Haworth,
Jr., and Ulyan A. Martin, Respondents.

No. 50515.

Supreme Court of Missouri.

Division No. 2.

Feb. 8, 1965.

Farrington & Curtis, E. C. Curtis, Thomas Strong, Springfield, for respondent Raymond Burkeybile.

James H. Keet, Jr., and Horace S. Haseltine, Lincoln, Haseltine, Keet, Forehand & Springer, Springfield, for appellant.

STORCKMAN, Presiding Judge.

This is an action to recover damages in the sum of $100,000 for personal injuries sustained by the plaintiff when a truck driven by the defendant Burkeybile backed onto plaintiff's legs while plaintiff was undertaking to repair a tire chain on the right rear wheel of a Volkswagen automobile bus in which he was a passenger and which was owned by the defendant Haworth and was being operated by the defendant Martin. At the close of plaintiff's evidence, the trial court directed a verdict in favor of all three defendants. The plaintiff's motion for a new trial was overruled and he appealed.

After the transcript of the record on appeal was filed in this court, the defendants Haworth and Martin paid the plaintiff $2500 and plaintiff executed a covenant not to sue. Thereupon, the plaintiff dismissed his appeal as to these defendants leaving it pending as to the defendant Burkeybile only. This court has jurisdiction of the appeal because the amount remaining in dis-

pute exclusive of court costs exceeds the sum of $15,000

■ On this appeal the plaintiff contends that he made a submissible case on primary negligence, that he was not guilty of contributory negligence as a matter of law and, in any event, he made a submissible case under the humanitarian doctrine. He also contends that the court erred in excluding certain parts of defendant Burkeybile's deposition offered in evidence as admissions against interest. In addition to countering the plaintiff's contentions, the defendant Burkeybile asserts that the trial court erred in failing to quash the service of summons as to him because of improper venue. In determining the sufficiency of the evidence to support a submission, the reviewing court must consider as true the evidence favorable to the plaintiff's case together with all favorable inferences that can reasonably be drawn therefrom, and evidence to the contrary must be disregarded. We will confine our statement of the facts to the evidence essential to a determination of the questions presented. For convenient reference, we will generally refer to the defendants in the trial court by their surnames.

The plaintiff, aged forty-one, was a musician and professional entertainer residing in Springfield, Missouri. Haworth, also a resident of Greene County, owned a Volkswagen automobile equipped with a bus body, which was used to transport entertainers to and from out-of-town engagements. For this service he was paid by the booking agency on a mileage basis. The entertainers paid no part of the transportation expenses. On March 15, 1960, a troupe consisting of the plaintiff, Haworth, Martin, and L. D. Keller, were transported in the bus from Springfield to Oskaloosa, Iowa, to fill an engagement. The evening show was completed about 10 p. m. and shortly thereafter the four began the return trip on U. S. Highway 65.

Haworth was driving his bus when they left Oskaloosa but sometime thereafter, probably at Indianola, Iowa, Martin took over the operation and control of the bus with Haworth's permission and continued to drive during the time in question. Snow was falling in Iowa and it became heavier as the troupe proceeded south in Missouri. Also a wind was blowing causing snow drifts to form on the highway. At Princeton, Missouri, tire chains were put on the bus by a service station attendant. Before the group reached Trenton, links of the chain on the right rear wheel became loose and were striking the underside of the fender or body of the bus, but there was no place open along the highway where it could be repaired until in the vicinity of Trenton members of the group observed the lights of a maintenance building of the Missouri Highway Department. Martin drove onto the parking area and stopped near one of the buildings. At that time the plaintiff was riding in the right front seat next to Martin the driver. Haworth and Keller were reclining on seats or benches in the back portion of the bus; they were apparently asleep as they had taken no part in the discussion between Martin and the plaintiff regarding the loose chain. It was about 5 a. m. and various highway maintenance vehicles and equipment were parked around the building. The lock on the door of the bus on the driver's side was broken and could not be opened. The plaintiff got out on the right side, went into the building and obtained a piece of wire from one of four or five men in work clothes who were standing around a stove. The plaintiff then went back to the bus, obtained a flashlight from Martin who had remained in the bus, and told Martin to see that the emergency brake was on since he was going to wire the links of the chain back in place. The plaintiff then went behind the bus, crawled partially under it at the right rear wheel with the lower part of his body from the waist down extending beyond the right side of the bus. While he was in this position undertaking to repair the chain, the defendant Burkeybile, an employee of the highway department, entered a maintenance truck parked nearby and backed it in such a manner that its

left rear wheels equipped with heavy duty chains rolled upon plaintiff's feet and legs injuring him severely. The medical evidence relating to plaintiff's injuries was omitted from the transcript since it has no bearing on the issues presented.

From the testimony and a plat and photographs in evidence, it appears that the maintenance depot is on the south side of U. S. 65 (Trenton business route) which runs generally east and west at this point. There were two buildings, gasoline pumps, and cinder and chat piles on the area which is paved with asphalt. The building with which we are chiefly concerned is one-storied, of brick construction and sometimes referred to as the garage. According to the plat in evidence, it is approximately 40 feet wide east and west and 80 feet long north and south. The east side of this building is about 50 feet west of the west side of the entrance from the highway to the area. On this east side there are four overhead doors, each about 12 feet wide, obviously intended to admit heavy equipment. In the upper half of these doors, there are two rows of panes consisting of eight panels each. On the north side of the building near the northeast corner, there is an ordinary-sized door which furnishes access for persons entering the building. There is evidence that the snowfall had stopped entirely; if it was snowing at all, it was very light, or the wind may have been stirring up some flakes from the ground. The parking area was covered with snow but it was not deep and was pretty-well packed or had been "bladed off".

The defendant Martin was a resident of Nebraska at the time of trial and his deposition was read by the plaintiff. This and other evidence offered by the plaintiff tended to prove that when Martin drove onto the lot several pieces of highway maintenance equipment were parked on the east side of the garage building. The truck which injured the plaintiff was the most northern vehicle. It was parked headed west about a foot north of the northern-most overhead door and about four feet east of the building. No part of the truck was in front of the door. The tail and parking lights of the truck were on and the motor was running. A motor grader headed west was parked with at least a portion of it south of the north door. The grader was considerably longer than the truck. Martin stopped the bus about two feet behind the grader headed west so as not to block the pathway to the overhead door. The right side of the bus was about a foot north of the north side of the grader and about seven feet south of a prolongation of the south side of the Burkeybile truck. Martin had his head and taillights on and the motor running when the plaintiff went into the building to get the wire. The top of the bus was dark green and the lower part was light green. When the plaintiff came out of the building, he could see the lights on the bus. When the plaintiff went into the building, he passed within four or five feet of the left side of the Burkeybile truck and within about a foot and a half of the front end.

Shortly after plaintiff got the flashlight from Martin and went to fix the chain, Martin saw Burkeybile at the left front corner of the truck; he appeared to be coming from the building. Burkeybile went to the left side of his truck, got into the driver's seat, backed it east for a short distance, then turned it so that the rear end of the truck was moving southeast toward the right rear portion of the bus and the place where the plaintiff was fixing the chain. When Martin saw the truck moving toward the bus and plaintiff he tried to sound the horn of the bus but it would not work. The plaintiff screamed when the truck wheel went onto his legs and the truck was stopped in that position. When Burkeybile moved his truck forward, the spinning action of the wheel pushed the plaintiff several feet behind the bus. When the occupants got out of the bus, they saw the plaintiff lying in the snow behind the bus. He was wearing dark clothing. If Burkeybile had backed straight east and

had not turned to the southeast, he would not have injured the plaintiff or come close to the bus.

The evidence as to visibility was not altogether certain. There was testimony that the accident happened about 5 a. m. on March 16, 1960, although Martin thought it was about 6 a. m. There were three floodlights which cast their light mostly on the ground in front of the building. Lights inside the garage would be visible through the glass panes in the overhead doors. There was testimony that there were lights on the bus and the truck and that daylight was starting to break.

Excerpts from defendant Burkeybile's deposition put in evidence as admissions against interest were to the effect that when Burkeybile was instructed by the district foreman to do further work on the highway he came out of the garage and went to his truck to "gas up". The gasoline pump was located on the parking area about 55 feet east of the building and about on a line with its northern side according to the plat and photographs in evidence. He got into his truck, started the motor, turned on the lights, and started to back. As he did so, he left the door on the driver's side open and looked toward the motor grader to see that the front of his truck missed the blade of the grader. There was a snowplow attached to the front of his truck but it extended less than a foot beyond the left side of the truck. The cinder spreader on the rear of the truck was no wider than an ordinary truck. The grader was about twice as long as his truck and about half of his truck had passed the grader when he heard the plaintiff scream. Burkeybile further stated that the bus had been driven right up behind the grader; that it was hidden from his view by the grader and not because of the snow; and if the motor grader had not been there he would have seen the bus. He did not know if there were any lights on the grader, but the lights on the building were about as bright as those on the grader would have been.

On objection by the defendant Burkeybile, the court excluded other depositional statements offered as admissions against interest. In substance the excluded statements tended to prove that Burkeybile was one of five highway maintenance men who had been on duty since 7 p. m. the day before; that all five of them were at the maintenance depot at the time the accident happened. Burkeybile and Johnson, another employee, had returned to the garage a little before 5 a. m. Burkeybile parked his truck near the north door of the garage; he did not leave the motor running. He then proceeded to put oil in his truck and performed other chores, all of which took about ten minutes after which he went into the garage and stood around the stove with other employees. He went in and out of the garage through the small door on the north side. Shortly after Burkeybile entered the garage, the district foreman called and directed him and a fellow worker to go back out to a designated section of the highway. The truck did not have backup lights, but there were "great big red tail lights" which showed "a little light" to the rear. Objections to the statements offered were on the ground that they did not constitute admissions against interest in that they did not tend to show liability and that the defendant Burkeybile was in court and could be called by plaintiff as a witness.

■■■ In order for a statement of a party to be competent as an admission against interest, it is not necessary that it be a direct admission of the ultimate fact in issue, but it may be competent if it bears on the issue incidentally or circumstantially. Donnelly v. Goforth, Mo., 284 S.W.2d 462, 465[2]; Albertson v. Wabash R. Co., 363 Mo. 696, 253 S.W.2d 184, 189[6]; Hoeffner v. Western Leather Clothing Co., Mo.App., 161 S.W.2d 722, 730[20]; 31A C.J.S. Evidence § 272, p. 697. Furthermore, a statement "made in a deposition, relevant to the issues, may be admitted against the deponent as admissions against interest in the same or another action to

which he is a party, even though he is present in court and able to testify, or has testified." 31A C.J.S. Evidence § 308b, p. 792. Among numerous Missouri cases supporting this statement of the law are Brown v. Kroger Co., Mo., 334 S.W.2d 80, 82[2]; Wilt v. Moody, Mo., 254 S.W.2d 15, 18[2, 3]; Pulitzer v. Chapman, 337 Mo. 298, 85 S.W.2d 400, 411[8]; and Dawes v. Williams, 328 Mo. 680, 40 S.W.2d 644, 646[2]. The statements referred to tended to show relevant circumstances and the court erroneously excluded them; however, since they are preserved in the transcript, they will be considered in connection with the questions presented on appeal.

The state highway commission is empowered to acquire in the name of the State of Missouri by condemnation or otherwise "sites for garages and division offices and for storing materials, machinery and supplies". Section 227.120(10), RSMo 1959, V.A.M.S. The evidence demonstrates that the area in question was such a place. The area was adjacent to the highway and an open driveway connected them. The plaintiff's purpose in going onto the premises and his activities in carrying out his purpose were such that it cannot be said that he was a trespasser or unlawfully on the premises at the time he was injured. The defendant contends the plaintiff was at most a licensee and we may so consider him for the purposes of this case although the category in which he is placed is not necessarily controlling in view of the fact that active negligence is charged. See Anderson v. Welty, Mo.App., 334 S.W.2d 132, 136[5], and 65 C.J.S. Negligence § 35 i, pp. 501–502.

■ Where injuries to a licensee are caused by the affirmative or active conduct of another, as distinguished from an existing or passive condition of the premises, the person committing the acts is subject to liability for failure to exercise ordinary care towards such licensee if his presence on the land is known or should reasonably be known to the actor. Anderson v. Welty, Mo.App., 334 S.W.2d 132, 136–137[6];

Gruetzemacher v. Billings, Mo., 348 S.W. 2d 952, 959[7]; Twine v. Norris Grain Co., 241 Mo.App. 7, 226 S.W.2d 415, 422[7]; 65 C.J.S. Negligence § 35 h, p. 501, § 36, p. 502. There can be no doubt that the operation of a motor vehicle is active or affirmative in nature regardless of where it occurs.

■ On the record before us there is no showing that highway travelers or other persons other than employees customarily used or frequented the maintenance area; hence, there is no basis for holding that there was a constant or continuing duty to anticipate that persons other than employees of the highway department would be on the premises. But there is substantial evidence from which a jury could reasonably find under the circumstances on this particular occasion that the defendant Burkeybile knew or should have known that the plaintiff and the vehicle in which he was a passenger were on the premises. The evidence would support a finding that Burkeybile was in the garage and one of the highway employees around the stove when the plaintiff entered, explained his mission, and obtained a piece of wire to repair the tire chain. Further the jury could find that Burkeybile, as he came out of the north door of the building and went along the left side of his truck, saw or could have seen the bus with lights on it parked behind and about a foot north of the grader. Under the circumstances the jury could find that Burkeybile had the duty of observing to determine whether there was any person around or about the standing vehicle. 7 Am.Jur.2d, Automobiles and Highway Traffic § 381, p. 930. There is evidence from which the jury could reasonably find that the lighting conditions and visibility were such that if Burkeybile had looked he could have seen the lower portion of plaintiff's body on the snow at the right rear corner of the bus. The jury could reasonably find that under the circumstances shown on this particular occasion the defendant Burkeybile had a duty to keep a lookout for the plaintiff and the vehicle in which he was a passenger

and to exercise ordinary care to avoid injuring him, and the violation of that duty would constitute primary negligence. Haines v. Bridges Asphalt Paving Co., Mo., 55 S.W.2d 431, 433[2, 3]; Mayfield v. Kansas City Southern Ry. Co., 337 Mo. 79, 85 S.W.2d 116, 123[7], 124[17]; Osby v. Tarlton, 336 Mo. 1240, 85 S.W.2d 27, 30[1, 2]; Horrell v. St. Louis Public Service Co., Mo., 277 S.W.2d 612, 614[1]; Caulton v. Eyre & Co., 330 Pa. 385, 199 A. 136; Potter Title & Trust Co. v. Young, 367 Pa. 239, 80 A.2d 76.

The evidence tends to prove that Burkeybile did not maintain a lookout for the plaintiff or the bus in which he was traveling. In fact the defendant conceded that he kept no lookout other than to see that his truck cleared the grader as he turned and backed on a collision course with the plaintiff and the standing bus. On the record we are constrained to hold that the plaintiff made a submissible case of primary negligence and that the trial court erred in sustaining the motion for a directed verdict.

■ The defendant further contends that plaintiff was guilty of contributory negligence as a matter of law in lying under the bus with his legs extended. The cases cited in support involve voluntary exposure to danger on city streets, sudden entry by the injured party into the danger zone and such other circumstances as to make them inapplicable and not controlling in this case. From the evidence the jury could find that there were no other persons outside the garage when the plaintiff set about repairing the tire chain, a chore which could hardly be expected to take an inordinate amount of time. There were lights on the bus and the plaintiff was about seven feet from the path of the truck if it had been moved back in a straight line. It was not until the truck was turned and backed on a collision course with the standing bus that the plaintiff was endangered. A person is not required to look for danger where he has no cause to anticipate it, or when the danger would not exist but for the negligence of another. Anderson v. Welty, Mo.App., 334 S.W.2d 132,

137–138[8]; Williamson v. St. Louis Public Service Co., 363 Mo. 508, 252 S.W.2d 295, 299 [7]. Reasonable minds could differ on the question of plaintiff's contributory negligence so we cannot say as a matter of law that the case is not submissible by reason thereof. The issue of contributory negligence was for the jury. Binion v. Armentrout, Mo., 333 S.W.2d 87, 91 [4, 5]; Thompson v. Byers Transp. Co., 362 Mo. 42, 239 S.W.2d 498, 499–500 [1–4]; Lucas v. Barr, Mo.App., 297 S.W.2d 583, 585 [2]; Brandt v. Thompson, Mo., 252 S.W.2d 339, 341 [1 & 2].

■■ The plaintiff also contends he was entitled to submit his case to the jury on the humanitarian theory of negligence. We cannot agree. A humanitarian case which leaves one or more of the essential elements to guesswork, speculation, or conjecture is not for the jury. Moore v. Ervin, Mo., 374 S.W.2d 142, 149[3]; Davis v. St. Louis Public Service Co., Mo., 316 S.W.2d 494, 497[4]. On this score the petition charges that Burkeybile saw or could have seen plaintiff in a position of imminent peril in time thereafter to have sounded a warning, to have stopped the truck, or to have swerved the truck aside and thereby avoided the injury. There is no evidence as to when or at what distance the direction of the truck's backward movement was turned to the southeast toward the plaintiff. In short there is no evidence from which the jury could find when or at what distance the plaintiff came into a position of imminent peril. Nor is there evidence from which the jury could find that the defendant had the ability to warn, stop, or swerve after imminent peril existed. See Bunch v. Missouri Pacific R. Co., Mo., 386 S.W.2d 40, decided January 11, 1965.

■ Furthermore, in order to extend the humanitarian doctrine to discoverable peril as well as discovered peril, there must be a duty to keep a *continuous* lookout such as is imposed as a matter of law in public places, such as streets and highways, or in places public in nature because they are

frequented and used by many people. Faught v. Washam, 365 Mo. 1021, 291 S. W.2d 78, 82[4]; Green v. Guynes, 361 Mo. 606, 235 S.W.2d 298, 302[7]; State ex rel. Brosnahan v. Shain, 344 Mo. 404, 126 S.W. 2d 1193, 1196[4]. Where the duty to keep a lookout depends on the facts and circumstances of the particular occasion, the humanitarian doctrine is inapplicable insofar as discoverable peril is concerned, and the failure to keep the lookout required by the circumstances is a matter of primary negligence only. State ex rel. Brosnahan v. Shain, 344 Mo. 404, 126 S.W.2d 1193, 1196 [2 & 3]; Kobusch v. Ruberoid Co., 355 Mo. 48, 194 S.W.2d 911, 914[4]; Anderson v. Prugh, 364 Mo. 557, 264 S.W.2d 358, 364 [12]. On the record before us, the maintenance area was not a place where a continuous lookout was required as a matter of law and there is no evidence that Burkeybile actually discovered the plaintiff in a position of imminent peril. The trial court did not err in ruling that a submissible case of humanitarian negligence had not been made.

The remaining contention is that the trial court erred in failing to quash the service on the defendant Burkeybile and to dismiss plaintiff's petition. Burkeybile's first pleading was a motion to dismiss for failure to state a claim filed June 13, 1962, and overruled August 10, 1962. On August 22, 1962, he filed his separate answer which did not raise the issue of improper venue. On February 28, 1963, after depositions had been taken and interrogatories propounded, Burkeybile filed his motion to quash and dismiss on the ground that the defendant Haworth had been made a party defendant for the sole purpose of establishing venue in Greene County and to obtain jurisdiction over Burkeybile who was a resident of Grundy County. The motion alleged that "there was and is no factual basis which would support an honest belief on the part of plaintiff that he had a cause of action against the defendant Haworth." The motion incorporated by reference the interrogatories, answers thereto, and various depositions which were before the trial court when he overruled the motion on March 11, 1963, and have been lodged in this court.

The defendant Burkeybile concedes the plaintiff's petition stated a cause of action against Haworth but asserts that actually the plaintiff had no factual grounds for believing Haworth could be subjected to liability. He relies on Diehr v. Carey, 238 Mo.App. 889, 191 S.W.2d 296, 300–301 [5–6], and similar decisions for the legal proposition that the court in order to determine if there has been a fraudulent joinder will look behind the pleadings and determine whether any "factual basis could exist to support an honest belief on plaintiff's part that he had a cause of action against the resident defendant". This does not mean, however, that there must be a showing that the plaintiff will ultimately succeed in his action. We need only determine if the plaintiff was entitled to an honest belief that under the law and the evidence he had a justiciable claim against Haworth.

Both sides have briefed the questions exhaustively but we need not explore all of the propositions suggested. The evidence shows that Haworth agreed with the booking agency to furnish the transportation for the performers, including the plaintiff, on this trip as he had done on others on a mileage basis. The plaintiff thus became a passenger in Haworth's bus and Haworth owed his passengers a duty to exercise due care to transport them safely. Martin became Haworth's agent when he took over the driving with the permission and consent of Haworth. Haworth retained his status as principal although he took a rear seat and perhaps went to sleep. The evidence is reasonably susceptible of this interpretation. The doctrine of joint venture and the fellow-servant relationship suggested by the defendant have no bearing on this record. The fact that the door on Martin's side was jammed and would not open, that the tire chain broke or became loose, and that the horn did not blow when Martin undertook to use it as a warning

are evidentiary circumstances but need not be depended upon as the proximate cause of the injury.

If the door on Martin's side would have been operable, Martin might well have been the one to secure the wire and repair the chain. At least the plaintiff's status was such that he could have expected Martin to do so. The situation is somewhat comparable to where a person under no obligation to do so undertakes to assist in extricating or starting an automobile. In this situation the operator of the motor vehicle owes a duty of exercising ordinary care to avoid injury to the one furnishing the help, and this includes a duty to warn of any activity which might be hazardous to the person helping. 7 Am.Jur.2d, Automobiles and Highway Traffic § 383, p. 932. Further in 8 Am.Jur.2d, Automobiles and Highway Traffic § 602, p. 154, it is stated: "For example, negligence in operation may exist on the part of one into whose control the motor vehicle has been delivered by the owner, although the former was not actually driving the vehicle at the time of the accident from which the liability of the owner arose. The user may be found guilty of negligence in operation so as to render the owner liable, where he fails adequately to protect one who offers his assistance in repairing the vehicle when it is in a disabled condition on the highway, * * *." Again in 8 Am.Jur.2d, Automobiles and Highway Traffic § 615, p. 165, we have this statement: "The relationship between the owner of the motor vehicle and one employed by him to drive it, as regards the former's liability for the latter's negligence, is the same as that between employer and employee generally. It makes no difference as to the owner's liability whether he was present in the motor vehicle or not at the time of its negligent operation, so long as it was being driven in the scope of the driver-employee's employment or in furtherance of the owner-employer's business." This suggests the doctrine of respondeat superior rather than

imputed negligence. In Fletcher v. Kemp, Mo., 327 S.W.2d 178, 182, this court applied the rule that "a duty to exercise ordinary care is imposed upon one who invites another to assist in an operation." In view of the settlement of plaintiff's claims against Haworth and Martin previously referred to, it is unnecessary to determine if a submissible case was made as to them and we do not do so. In view of the statements of law, such as the foregoing, and the facts of the case, however, it is not unreasonable and wholly baseless to contend that the plaintiff was entitled to a warning of some sort from Martin acting in the place and stead of Haworth. Such warning could have been directed either to Burkeybile or the plaintiff when Martin saw the truck about to back toward the place where the plaintiff was engaged in repairing the chain. Martin was able to get out of the bus and did so very promptly when the plaintiff screamed.

The law in the field involved is not so well settled that Haworth's joinder can be held to be fraudulent or pretensive and with no reasonable prospects of recovery. The court did not err in overruling the motion to quash the service and to dismiss the plaintiff's petition. Lichterman v. Crockett, Mo., 331 S.W.2d 607, 609–610[1–2]; Willey v. Fyrogas Co., 363 Mo. 406, 251 S.W.2d 635, 638[1]. The plaintiff also contends that Burkeybile waived his right to complain by filing an answer to the merits, taking depositions, and otherwise entering a general appearance in the case before attacking the venue. Since we have held the joinder to be proper, we do not determine the question of waiver.

For the reasons stated judgment is reversed and the cause remanded.

EAGER, J., concurs.

FINCH, J., not participating because not a member of the court when cause was submitted.